### No. 2085. Decided November 2, 1910.

**1.—Evidence—Ancestor—Identity—Declaration.**

On the question of identity of the ancestor of parties claiming title to land with the person of the same name to whose heirs it was granted, declarations of deceased members of the family to matters of family history bearing on such identity are admissible in evidence. Byers Bros. v. Wallace, 87 Texas, 503, distinguished. (Pp. 526, 527.)

**2.—Ancestor—Identity—Burden of Proof—Prior Possession of Land.**

In an action for the recovery of land between parties claiming as the respective heirs of two persons of the same name, to the heirs of whom it was granted, the burden of proof was on plaintiff to establish the identity of his ancestor with the person for whose military service the land was granted. This was not altered by the fact that one claiming in the right of plaintiff had possession of the land prior to defendants where such possession had been voluntarily surrendered to defendants by the person so holding it. (Pp. 527–529.)

Error to the Court of Civil Appeals for the Second District in an appeal from Jones County.

Kirby sued Boaz and others for the recovery of land. Defendants having judgment, he appealed, and on affirmance obtained writ of error.

*Hardwicke & Hardwicke, Theodore Mack* and *A. H. Kirby,* for plaintiff in error.—Declarations by deceased relatives, self-serving because of interest when made, are inadmissible under the hearsay rule to prove heirship. Scheidegger v. Terrell, 43 So., 26.

Hearsay testimony is not admissible to prove that one went to Texas some time between 1836 and 1838, to fight in the war, and such does not come within the rule which permits proof of pedigree and kindred matters by hearsay evidence. Byers v. Wallace, 87 Texas, 503; Sargent v. Lawrence, 16 Texas Civ. App., 540.

Where it appears that the question of identity is involved in such doubt as that the jury is unable to solve the issue, a plaintiff adducing proof of prior possession was entitled to recover, unless defendants identified the person to whom the certificate was issued, as being the one under whom they claimed. Keys v. Mason, 44 Texas, 143; Burk v. Turner, 79 Texas, 278; Foster v. Johnson, 89 Texas, 645; Watkins v. Smith, 91 Texas, 591; House v. Reavis, 89 Texas, 630; Lockett v. Glenn, 65 S. W., 482.

*Thomas & Chapman* and *C. H. Steele,* for defendants in error.— Hearsay evidence consisting of family history or declarations is admissible, and where time or place of residence or death is offered for the purpose of identifying the person as a member of a particular family, it is admissible as being so closely related to, if not in fact part of pedigree, that the same rules of law are applicable. Byers v. Wallace, 87 Texas, 511; Minor v. Lumpkin, 29 S. W., 800; Keck v. Woodward, 116 S. W., 79.

Prior possession being a mere rule of evidence and not a rule of property, when plaintiff in error (plaintiff below) fully exhibited his title, as he did in this case, the title thus shown fully explains his possession, and there is no longer any presumption arising from that possession. Lincoln v. French, 105 U. S., 614, 26 L. Ed., 116, secs. 92, 98; Clerk v. Hills, 67 Texas, 141; Steiner v. Jester, 25 S. W., 411; St. Louis & S. W. R. R. Co. v. Parks, 97 Texas, 131.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The plaintiff in error, as plaintiff, sued the defendants in error to recover a tract of 1280 acres of land patented to the heirs of John Wall by virtue of a bounty warrant issued to them in 1840 in consideration of services rendered by him as a soldier of the Republic of Texas.

The titles of the parties depended on the question of fact whether this John Wall was identical with a John Wall, of Nash County, North Carolina, the ancestor of those under whom plaintiff claims, or with a John Wall, of Northampton County, in the same State, the ancestor of those from whom defendants derive title.

The plaintiff lost in the District Court and in the Court of Civil Appeals, and most of his complaints in the application for writ of

error are of the admission of evidence, consisting of declarations of deceased relatives of the last mentioned John Wall in connection with proof of their pedigree, tending to identify him as the one who had joined the Texas army and earned the grant in question. The nature of this evidence is stated in the opinion of the Court of Civil Appeals. It is such as has repeatedly been held to be admissible in such inquiries and we need not add to the discussion of the questions in the opinion referred to. It does not fall within the decision of this court in Byers Bros. v. Wallace, 87 Texas, 503.

Another complaint is of the charge of the court putting upon plaintiff the burden of proving that the Wall under whom he claims was the ancestor of the heirs to whom the land was granted, and instructing, in substance, that if the jury could not determine which one of the Walls was such ancestor they should find for the defendants. It is contended that the onus of proving identity did not rest upon the plaintiff because of the fact of a prior possession to the benefit of which he was entitled, constituting prima facie evidence of title in the person who had held it, and to whose rights plaintiff had succeeded. The evidence of such possession, in brief, was as follows: The holder of the title which plaintiff now asserts executed to A. E. Thomas a deed conveying the entire tract of land in controversy and reserving a lien to secure the payment of a note given by Thomas for the purchase money. Thomas entered into possession in April, 1895, establishing a camp, cleared and put in cultivation ten or fifteen acres, and, in addition, enclosed as a pasture thirty or forty acres of the land, all in the northeast corner of the tract. In September, 1895, those holding the title now asserted by defendants, who had paid taxes on it since 1884, went to enclose the tract, and, finding Thomas' improvements, began the construction of a fence to surround all of the 1280 acres except that included in his enclosures. They were temporarily stopped by threats of violence on Thomas' part, but, having prepared themselves with arms, they returned to the work, when, to prevent an imminent collision, persons having no authority to bind either claimant of the land, and not intending that their action should be binding unless ratified, entered into a writing providing for a division of the tract between the adverse claimants. This prevented violence and the fence was completed as planned. The agreement was not ratified and had no other effect. Soon after this Thomas approached C. H. Steele, the attorney representing the Northampton County claimants, and offered to sell his claim for $100, which offer was accepted, and, on September 19, 1895, a note for $100 as for the purchase money was executed by Steele to Thomas and a deed for the land was executed by Thomas to Steele, reserving a lien to secure the note. On November 2, 1895, Steele for a recited consideration of $200 executed a deed to one Penick for the same land, which was not done to pass the title to Penick, but only for a purpose not very definitely explained and not, so far as we can see, affecting the question now before us.

On November 30, 1895, Thomas sued Steele and W. H. Hughes, the latter of whom was heir of the Northampton John Wall, alleging title and possession of the land now in controversy prior to Septem-

ber 19, 1895, the execution and delivery on that day of the deed by
him to Steele and of the note by Steele to him as before stated; that
therein Steele acted for himself and Hughes, both of them being
equally interested in the transaction and acting in pursuance of an
understanding between them; that they had refused to perform and
had repudiated the contract and that plaintiff (Thomas) has elected
to treat it as at an end and had taken actual possession as before;
that the deed is of record and casts a cloud upon plaintiff's title
which he prayed might be removed. This pleading was afterwards
amended so as to contain only the allegations proper to the action
of trespass to try title, the defendants being Steele, Penick, W. H.
Hughes and Thomas Hughes, the last named having succeeded to the
title of W. H. Hughes. In this action Thomas was represented by
the attorney, who throughout all the transactions has represented as
attorney at law and in fact the rights and interests of those asserting
the title now held by plaintiff, and it appears that an agreement was
reached under which the $100 agreed to be paid by Steele was paid
to the attorney, for Thomas, and a judgment was entered February
29, 1896, in favor of Thomas Hughes against Thomas and Penick
for the land and removing the cloud from his title caused by their
claims. It appears that this judgment was entered by agreement
between the defendants in that suit, but there is a conflict of evi-
dence as to whether or not the attorney for Thomas was cognizant
of and agreed to it throughout, or was concerned in it further than
to accept the $100 and to leave the defendants to settle the judgment
between themselves as they chose, giving no further attention to the
case, which latter facts are conceded. Since that time the defendants
and their vendors have had actual possession of the land, paying all
the taxes on it. The present action was brought in September, 1900.

From the facts recited no reasonable inference can be drawn, but
that Thomas and others, of whose action in asserting the title of the
heirs of the Nash County Wall and in taking the possession relied
on plaintiff would avail himself, voluntarily surrendered that pos-
session for a consideration to the adverse claimants and ever after-
wards abandoned it. It is true that a peaceable and exclusive pos-
session taken and held under a claim of title constitutes prima facie
evidence of title; and we think it is true also that a possession taken
by the vendee under such a contract as that between Thomas and his
vendors ought to be treated as evidence in favor of the vendors when
an issue of title properly arises between them and an adverse claim-
ant as fully as it would be in a like issue between the vendee and
such other claimant. But an abandoned possession could not have
such effect in favor of him who held and then abandoned it (Wilson
v. Palmer, 18 Texas, 595; Sabariego v. Maverick, 124 U. S., 296-
301), and, therefore, not in favor of others who seek to avail them-
selves of it as evidence of their title. There was never a possession
under the plaintiff's claim of title except that of Thomas, and that
was surrendered to the other parties and is of no greater force for
plaintiff than it would be for Thomas. As the evidence stands, it
shows not only that Thomas surrendered his possession to the adverse
claimants, but that his action in doing so was acquiesced in by those

who now seek the benefit of it. The case might be different if plaintiff was in a position to ask the court to restore to him a possession from which Thomas, his vendee, had been ousted by the defendants or those under whom they claim; but the possession having been voluntarily surrendered, we are unable to see how it ought to furnish evidence of superiority in the title of plaintiff over that of those to whom it was surrendered, or impose upon the defendants the burden of showing that the Wall under whom they claim rather than the other was the soldier by whose services the land in question was earned. The plaintiff was bound under those circumstances to show title by evidence other than the possession and the charge was proper.

The judgment of the courts below will be affirmed.

*Affirmed.*