St. Louis Union Trust Company v. Smith.

4-7441                                       182 S. W. 2d 945

Opinion delivered October 30, 1944.

*J. F. Gautney* and *Roy Penix,* for appellant.

ROBINS, J.   H. J. Sternberg filed ejectment proceedings in the circuit court against appellee, I. M. Smith, on July 9, 1942, to recover the northwest quarter of the southwest quarter of section twenty-eight, township fourteen, north, range one, east, in Craighead county, Arkansas.   After the death of Sternberg, which occurred on January 10, 1944, the cause was revived in the name of appellants, St. Louis Union Trust Company and William F. Sternberg, as co-trustees of H. J. Sternberg's estate, and Edna W. Sternberg, his widow.   Appellee filed answer and motion to transfer to equity, which was granted. The chancery court rendered decree establishing appellee's title to the land, but declaring a lien thereon in favor of appellants for the amount expended by Sternberg in purchasing the land and in paying taxes thereon. Appellants seek to reverse this decree.

Sternberg claimed title to the land by virtue of a deed executed by the Cache River Drainage District to him conveying this land on January 5, 1939.   The land

was conveyed to the drainage district by the commissioner of the chancery court by deed executed on October 6, 1928, in foreclosure proceedings brought by the district to collect delinquent taxes due the district for the year 1928. Appellee asserted title to the land by adverse possession, claiming that he and his predecessors in possession had held the land adversely for more than seven years.

G. W. Brown acquired title and went into possession of this land in 1909. He cleared and put in cultivation approximately thirty acres, built a house, barn and fence, and made other improvements. Brown died in 1934 and his widow, Janie Brown, in the same year, married Fred Merrell, and she and Fred Merrell thereafter lived on the land until about March 9, 1937. The land was forfeited and sold to the State of Arkansas for the taxes of the year 1925 and was certified to the state in 1928.

In the early part of 1937 Fred and Janie Merrell decided to move away from the land. Appellee, who was living in the neighborhood, according to appellee's testimony, paid the Merrells $50 to give him possession of the land. According to the testimony of the Merrells appellee paid them $50 to advise him when they moved away from the place. Fred Merrell testified: "Q. Did you know about the condition of this title to the land involved here at the time you moved off of it? A. I knew it was state land. Q. You knew it was forfeited to the state? A. Yes, sir. Q. Did Smith know that? A. Yes, sir, absolutely." Janie Merrell testified: "Q. Do you know about the arrangement he made about going on the place? A. He came up there and gave us $50 and wanted us to let him know when we were going to move. We were going to move anyway. Q. Did you know it was forfeited to the state? A. Yes, sir. Q. Did Mr. Smith know that? A. Yes, sir, we told him." Immediately after the Merrells moved away from the land appellee moved on the land. No deed or other writing conveying the land was executed by the Merrells to appellee.

On December 20, 1938, appellee applied to the state and received a donation certificate covering this land. Appellee, however, failed to make the proof necessary to procure a donation deed within the statutory period, and his donation certificate was canceled by the commissioner of state lands on May 20, 1941. On January 22, 1943, H. J. Sternberg obtained from the state redemption deed for the land.

The sole question in this case is whether the lower court correctly upheld appellee's asserted right to the land by reason of his claim of adverse possession thereof for more than seven years before the bringing of the suit.

Appellee did not move on the land until March 9, 1937, and the suit having been brought on July 9, 1942, his own possession existed for a period of only five years and four months. In order therefore for appellee to establish adverse possession it was necessary for him to tack his possession to that of Fred Merrell and Janie Merrell, his predecessors in possession. While there was no privity of title between the Merrells and appellee, there was a privity of possession between them, because, under the proof, appellee was let into possession by the Merrells; and privity of possession is sufficient to authorize the tacking of possession in a case of this kind. Wood on Limitations, vol. 2, § 271, p. 1312; *Wilson* v. *Rogers*, 97 Ark. 369, 134 S. W. 318; *Horseman* v. *Hincha*, 138 Ark. 415, 211 S. W. 385.

But it was essential to a successful maintenance of a plea of adverse possession by appellee that not only appellee's possession be shown to be adverse, but that the possession of his predecessors, to which it was necessary to tack his own possession, likewise be proved to be adverse. "As a general proposition an adverse occupant cannot tack the possession of a prior occupant to perfect adverse title in himself where predecessor did not or could not claim the land adversely . . ." 2 C. J. S., Adverse Possession, § 132, p. 697. There was no testimony as to the character of the Merrill's possession except that of Mr. and Mrs. Merrell, and we can deduce

from their testimony only that they realized that there was an outstanding title to the land and that this was the reason why they abandoned it. This attitude of the Merrells was not consistent with an adverse holding of the land by them.

In the case of *Kirby* v. *Boaz,* 103 Tex. 525, 131 S. W. 533, the Supreme Court of Texas said: "But an abandoned possession could not have such effect (effect of adverse holding) in favor of him who held and then abandoned it . . . and therefore not in favor of others who seek to avail themselves of it as evidence of their title." "Possession taken when a prior occupant abandons . . . cannot be tacked." 1 Am. Jur. 880. Dealing with a somewhat similar situation this court, in the case of *Steward* v. *Scott,* 57 Ark. 153, 20 S. W. 1088, said: "The appellant had adverse possession of the land himself only about six years, and, as his vendee (vendor) Harrell did not claim the land, or expect to try to hold it, his possession was not adverse, because it was not hostile. It follows, therefore, that there was no adverse possession by the appellant and his vendee (vendor) for seven years, the period required to form the statute bar. The appellant could not add the time his vendee (vendor) was in possession to his adverse holding, because adverse possession is determined by the *quo animo* it begins and continues, and must continue for the full period prescribed by the statute, and it must be hostile."

Since the possession of the Merrells, as shown by their own testimony, was not adverse, but was merely at sufferance and in anticipation of an abandonment of the land by them, appellee could not tack thereto his own possession of the land for less than six years and thereby establish adverse possession for the statutory period. The lower court therefore erred in sustaining appellee's plea of limitation, and for this error the decree of the lower court is reversed and this cause is remanded with directions to enter a decree in favor of appellants for possession of the land and for such amount for rents as may be proper and equitable under the evidence.