Tommy R. WILLIAMS and Vela Iretha WILLIAMS v. Troy L. FEARS

5-5211 ·                                      452 S. W. 2d 642

Opinion delivered April 13, 1970

*Frierson, Walker, Snellgrove & Laser,* for appellants.

*Kirsch, Cathey & Brown,* for appellee.

LYLE BROWN, Justice. This suit was brought by Troy L. Fears to close a road running across his forty acres and serving as a passageway to adjoining acreage owned by Tommy R. and Vela Iretha Williams. Fears contended that the use of the road was permissive in its inception and so continued. The Williamses countered with the plea that the roadway was established under an oral easement in about 1945 and by continued maintenance and use had ripened into a prescriptive easement. The chancellor held that Fears was entitled to have the road closed. The Williamses appeal on the ground that the trial court's decision is not sustained by a preponderance of the evidence.

For many years and until his death in 1957, Jesse Fears, appellee's father, owned the southeast forty acres

in Sec. 10, Twp. 17 North, Range 3 East, Greene County. He also owned other adjoining acreage to the north and east and the entire tract constituted the Jesse Fears homestead. The Fears forty with which we are concerned is the southeast forty acres and we shall refer to it as the SE SE. In about 1935, Johnny Houston acquired forty acres to the southwest of the SE SE. The northeast corner of the Houston forty joined the southwest corner of the SE SE. Roughly eight acres of the Houston forty were cut off from the balance of his forty by Swan Pond Ditch which ran east and west. Houston had no public way to reach that isolated acreage. After using for a time a rather unsatisfactory entrance across a private way, Houston, in about 1944, came to some type of agreement with Jesse Fears. As a result of that understanding, a gap was cut in Jesse Fears's fence at the southeast corner of Fears's SE SE and adjacent to Evening Star Road running north and south. Beginning at the gap a passageway was constructed westerly across the SE SE extending to Houston's northeast corner. At the end of the road Houston built a tenant-type house. We do not know to what extent the house was occupied through the years, but we do know occupancy was abandoned some years ago. Appellants, the Williamses, and a partner, purchased the Houston forty in 1959, and the Williamses bought out the partner in 1965. Johnny Houston and Tommy Williams used the access road during planting and harvesting time each year since it was constructed.

In 1961 appellee purchased the forty acres which joins on the south his SE SE. That meant that the combined eighty acres is cut almost in half by the access road which is the subject of this litigation. In 1967 appellant Tommy Williams approached appellee about their joining together to construct some drainage under the road. Appellee informed Williams that the former desired that the road be discarded because it hindered the economical operation of his two eighty-acre tracts as a unit. Williams disagreed and this lawsuit followed.

We have examined the pleadings and the testimony to determine precisely the issues before the chancellor. It was appellee's theory that his father, as a convenience to Johnny Houston, permitted a passageway to be constructed but that there was no conveyance of a dominant estate made—in other words, permissive use was all that Jesse Fears granted. Appellant answered by asserting that "such roadway was established by an oral easement granted by the owner of such property about the year 1945, on the basis of which easement the defendants' predecessors in title took possession of the property, opened the road and have continuously maintained the roadway to the present time." By their testimony appellants endeavored to show that Johnny Houston bought a perpetual easement, that Houston exercised use and dominion over the road from 1944 until 1959, and that control was continued by appellants from that date until the present. We agree with the chancellor that he properly defined the issues in these words:

> The testimony shows there is no question about it that Mr. Jesse Fears did give some sort of a right for Johnny Houston to have a road over his land as it existed at that particular time. Now the question I must decide is whether or not it was by permissive use or it was by granting of an easement by this oral method whereby it would be binding on Mr. Troy Fears or any of those who might succeed him in his title from here on.

As to the history of the road, four witnesses testified for appellee. Houston Holland homesteaded the Johnny Houston forty (and an adjacent forty on the east) in 1932. He was the grantor, Holland-to-Houston. He testified that at the time he sold to Houston the latter had no access on that part of the forty acres north of Swan Pond Ditch; that subsequently Jesse Fears permitted Houston to cut a gap in Fears's fence to make a road; and that thereafter Houston built a house at the end of the road. Appellee Troy Fears testified that he acquired his father's farm after the latter's

death in 1957; that he was born and reared in a farmhouse a short distance from the road in dispute, leaving home in about 1940; and that his father gave Houston permission to use the disputed area as a road. Appellee has lived in St. Louis for the past twenty years but explained that he personally supervises his farming operation, making numerous trips to the farm each year. His reasons for wanting to close the road are to develop the total acreage to a fuller potential, utilize larger equipment, and probably install irrigation. The instigation of the present controversy arose in 1967 when Tommy Williams approached him about Williams placing a tile across the access road, at which time he informed Williams of his plans to close the road. Appellee did not profess to personally know anything of the details of the transaction whereby his father granted access to Houston. He characterized it generally as a neighborly act of accommodation and as a purely permissive use. He testified that he had talked with Johnny Houston many times through the years and that no mention had ever been made of Houston having obtained a vested interest in the road.

Weldon Jetton testified for appellee. For some eight or nine years he lived in proximity to the access road. He related that Tommy Williams had used his heavy equipment to improve the county road but had never used it on the access road. Finally, William Stringer testified for appellee. He owned and cultivated forty acres just west of the Fears SE SE from 1939 through 1949. He recalled Jesse Fears making the statement: "I let Uncle Johnny have a road." The witness described Mr. Fears as being very accommodating to those he liked.

Johnny Houston was the principal witness for appellants. He impressed the chancellor as being "rather senile," and we reach the same conclusion after studying the testimony. He testified that he gave Jesse Fears $30.00 for the road and "if I traded the place off or sold it, this road fell heir to the fellow that bought the land off me, whichever way it was." He said he

obtained nothing in writing. Additionally, the witness testified to the same figure of $30.00 with respect to purchasing some fencing to be erected on the north side of the road. The chancellor could not discern whether the $30.00 attributed to the alleged purchase of the road actually went for that purpose or was used to purchase fencing. In one instance Houston said he bought the fencing from Jesse Fears and later he stated he bought it at Paragould. Here is another example of his frustrating testimony:

Q. It was just $30.00?

A. $30.00 for the fence.

Q. $30.00 for the fence or the road?

A. $30.00 for the fence and that's when I was supposed to have got the road. I went traveling up and down through there. That road cost me $30.00.

Mr. Houston was quite frank about his loss of memory. He was asked to recount the year in which he bought the property and he answered: "No, really I don't. There has been so much water run under the bridge and some of it went over that I can't recall. It has been a long time back."

The chancellor, after commenting on the contradictory nature of Mr. Houston's testimony, concluded that he could not "give it sufficient weight to establish an oral easement."

Appellant Tommy Williams testified that he was familiar with the access road when he bought the Houston forty; that at that time there was a fence on the north side, extending from the west end about 250 feet eastward; that appellee removed the fence about 1967; that he used the road in crop time but not during the winter months; that he had pulled some dirt up on the road with a dozer blazer, cleaned out brush, and

back-dragged; and that it was the most feasible way into the north side of his property. He did not testify that he received information from anyone concerning Houston's precise interest in the road.

Everett Rice, who lived in the same community for many years, described the road as having a ditch on the north side and a long row of trees on the south side. He described an incident which occurred in 1953 when he was working nearby on a tractor. Jesse Fears and Houston were at the road and a dispute arose between them. Houston is said to have gone to his house, obtained a shotgun and reappeared outside but did not return to the point where the argument arose. Rice said the noise of the tractor prevented him from hearing the conversation.

Calvin Cooper testified that he was working for the county in 1946 or 1947, running a motor grader. At that time, and at the request of Jesse Fears, he said he cut the first ditch on the north side of the access road. He described the road as then being nothing more than a footpath with a narrow bridge across the entrance. In his opinion the ditch was helpful to both Johnny Houston and to Jesse Fears; it aided in keeping water off the road and helped to drain the Fears property. He said he reminded Mr. Fears that the grader operation would stop up one end of the bridge and Fears explained that he would "shovel it out."

Former decisions are of little value on a factual issue of whether Houston's original entry was permissive rather than prescriptive. See *Stone* v. *Halliburton*, 244 Ark. 392, 425 S. W. 2d 325 (1968). Looking at the facts here from their four corners, and giving considerable credence to the chancellor's evaluation of Houston's testimony, we are unable to say that the chancellor's finding of an original permissive use is against a preponderance of the evidence. It was of some significance that Jesse Fears was said to be a man who readily accommodated his friends. Of much more significance is the fact that Johnny Houston conceded that he ob-

tained absolutely nothing in writing to support his claim of a perpetual right-of-way. The chancellor attached significance, and properly so, to a claim made by Houston which was inconsistent with an unlimited grant. On cross-examination Houston said he thought at the time of the transaction if he used the road seven years it would be his property. The manner in which Jesse Fears conducted himself with respect to the road is very indicative that he granted only a permissive use. In 1946 or 1947 it was Jesse Fears who had a ditch dug on the north side of the road; in 1953 Houston was engaged in doing some type of repair to the road and Fears ordered Houston away and took over the task; then at some unknown date while Houston still owned his forty the north fence was reduced in length to some 250 feet, presumably to give Fears a more unrestricted access to the road. Finally, appellee testified, and it was not contradicted, that neither Houston nor Williams ever claimed to him that they had obtained a dominant interest in the road.

Appellant contends that open and continued use of the road over occupied lands for a longer period than seven years created a presumption of a claim of right and shifted the burden of proof to appellee. Appellant cites *Boullioun* v. *Constantine*, 186 Ark. 625, 54 S. W. 2d 986 (1932). That rule does not apply here because it is shown that entry was gained for permissive use.

Appellants next contend that their utilization of the road ripened into a prescriptive right. On this point appellants carry a heavy burden. Since the use was initiated as permissive it cannot ripen into a prescription, irrespective of the lapse of time, until positive notice of adverse or hostile claim is conveyed to the owner and holding continues thereafter for the statutory period. *Harper* v. *Hannibal*, 241 Ark. 508, 408 S. W. 2d 591 (1966). As previously pointed out, we find no evidence that either Houston or Williams ever did anything to bring such notice home to appellee or his predecessor in title; in fact the evidence is to the contrary. Appellants point out, and correctly, that long and continued use and without objection, may couple

with other circumstances to become a deciding factor as to whether original permissive use has been converted to prescriptive use. See *Fullenwider* v. *Kitchens,* 223 Ark. 442, 266 S. W. 2d 281 (1954). Yet all those circumstances must combine to bring home to the servient owner a clear notice of hostility. Those circumstances are not in proof in this case. As stated by appellants, a permissive user may so change the usage as to bring home to the owner an adverse claim. For example, Houston used the road as a passageway to his house, while appellants did not use the house. On the other hand both Houston and appellants utilized the passageway principally for transporting implements of farming and for bringing out their products. We see no drastic difference in the utilization of the road proper. We do not think appellants met their burden of establishing a conversion from permissive use to a prescriptive right.

The charge against appellee of laches is without merit. Permissive entry and absence of notice of any claim of prescriptive right, both of which have been discussed, make laches inapplicable. The first notice of any claim of vested right we find was the occasion in 1967 when Troy Williams and appellee conferred about needed improvements on the road.

Affirmed.