Eugene and Glenda FIELDS *v.* William and Sharon GINGER

CA 95-153                                             925 S.W.2d 794

Court of Appeals of Arkansas
En Banc
Opinion delivered June 26, 1996
[Petition for rehearing denied August 14, 1996.*]

---

*The Rose Law Firm,* by: *Herbert C. Rule, III,* for appellants.

*Pryor, Barry, Smith, Karber & Alford,* by: *Gregory G. Smith,* for appellees.

JUDITH ROGERS, Judge. Appellants appeal from an order granting appellees a nonexclusive easement by prescription in a driveway and also quieting title in appellees to the strip of land lying south of the driveway. On appeal, appellants contend that both findings made by the chancellor are clearly against the preponderance of the evidence. Finding no error in the chancellor's decision, we affirm.

The parties are adjacent landowners. The property they now own was once part of a single, thirteen-acre tract owned by Bill and Mary Harris. The Harrises lived in a home which was situated on the southern two acres, which was separated from the rest of the property by a fence. The entire tract was bordered on the west by Highway 71. When the Harrises purchased the property, access to the home was gained by a circular driveway off a tin-horn from Highway 71. Mr. Harris later constructed an "L" shaped road across the property from Highway 71 to what is known as Commission Road. The road was placed south and parallel to the fence mentioned above, running in an easterly direction from the highway. At a point just beyond the house, the road makes a ninety-degree turn to the north, crosses the fence line and continues until it intersects Commission Road. Mr. Harris put in a gate where the road crossed the fence and placed a lock on it. Mr. Harris also built a concrete pad connecting the road and the home. The driveway in question is that part of the road as it runs from Highway 71 to the house. Grass was allowed to grow over the original circular driveway.

In 1978, the Harrises sold the home and two acres to Harlan and Myra York. In dividing the property, the Harrises retained title to the driveway with the location of the property line being some six feet south of the drive. After the sale, the Harrises rented the home from the Yorks for a year while they built their own home on the northern part of the property, including a separate driveway. During this time, Mr. Harris put in curbs and gutters along the driveway. The Yorks lived in the home and used the drive as the sole access to their property from 1979 to 1986, when the house was sold to the appellees, William and Sharon Ginger. Meanwhile, the Harrises divorced, and Mr. Harris later died in 1990. The Harrises' home was then occupied by their daughter and her husband, Larry and Lynette Denton. Appellants, Eugene and Glenda Fields, bought the northern tract from Mr. Harris's heirs in December of 1991.

Appellees received correspondence from appellant's attorney in

June of 1992 informing them that appellants considered appellee's use of the drive as being permissive. In August of 1992, appellant's attorney wrote another letter informing appellees that the appellant's "future plans for the property are such that it is probable that [appellants] will be closing the driveway." That same month, appellees filed this lawsuit claiming that they had acquired a prescriptive easement in the driveway. Appellees also contended that they had acquired the property south of the fence by adverse possession. The chancellor found that appellees had established their right to a permanent, nonexclusive easement by prescription in the driveway. The chancellor further determined that appellees had acquired the strip of land south of the driveway by adverse possession, but that appellees had failed to establish their claim to the property north of the drive to the fence. In his decision, the chancellor found that appellees had established their adverse claims by tacking their possession onto that of the Yorks.

■ Appellants first contend that the chancellor erred in finding that appellees had acquired a prescriptive easement in the driveway. Although we review chancery cases *de novo*, we will not reverse a chancellor's findings unless they are clearly against the preponderance of the evidence, or clearly erroneous. *Hutter* v. *Medlock*, 29 Ark. App. 122, 777 S.W.2d 869 (1989).

Myra York testified that the property was not surveyed when she and her husband bought the house from the Harrises in 1978. She said that she believed that everything south of the fence was theirs and that she assumed that the driveway went with the house because there was no other access to the home. She further testified that Mr. Harris told them that the driveway was theirs, saying, "It's your drive." She related that Mr. Harris used the driveway to move equipment to his property and that she did not object to his use of the road. She said that they always got along well and never had any problems with each other. Mrs. York also stated that the Harrises had their own driveway and did not use the drive in question on a regular basis.

Mary Harris related that she and Mr. Harris were divorced in 1986 but that they had dated each other after the divorce until his death in 1990. She testified that when they sold the house to the Yorks they intended to keep the road and property south of the fence for future development. She testified, however, that Mr. Harris told her that "Before seven years is up we've got to sell part of

this road to the Yorks or dedicate it to the county." Mrs. Harris later acknowledged that Mr. Harris was "definitely aware" that the Yorks could claim the drive by adverse possession after a seven-year period and she said that, sometime before she left in 1986, he asked her not to let him forget to do something about it. She said that she was not aware that he had done anything while they were married or during the time that they dated one another.

Appellee William Ginger testified that, at the time of his purchase of the property in 1986, he drove with the realtor up the drive, which was the only means of getting to the house. He said that he saw the fence to the left of the drive and observed that the house was enclosed by fences on all but the western boundary, and he said that he assumed that the area south of the fence, including the driveway, was part of the property he was purchasing. He said that he had used the drive for access to his home since he had bought the house, just as his predecessors in title had done.

Mr. Ginger recalled that Highway 71 was widened to four lanes in 1989. He said that Mr. Harris sought his cooperation in having the road dedicated to the county so that a left-hand turn lane for access to the drive could be placed on Highway 71. Mr. Ginger understood that a turnout could not be constructed for a private road, and he was amenable to the idea thinking it beneficial because it would increase the value of his property and also reduce the risk of having an accident. Ginger said that Mr. Harris also asked him to pay for paving his portion of the road. Ginger stated that the turn lane was built and a stop sign was placed at the opening of the drive by the county. He revealed that, during his discussions with Mr. Harris, a question arose as to who owned the road. Ginger said that he had believed the road was his and he looked at the survey, which had been done at the time he bought the property, and discovered that the Harris's owned the road. He further testified that Mr. Harris had used the road sparingly prior to the placement of the turn lane but that afterwards his use of the road became more frequent. Mr. Ginger said that he did not object because as far as he was concerned the road had been dedicated to the county. He felt that this belief was confirmed when Mr. Harris's daughter and her husband, the Dentons, asked him for permission to relocate their mailboxes onto the road, since the Post Office would not allow mailboxes to be placed on a private drive. He also said that the Dentons asked him for permission to name the road

Dakota Drive, after their son, and for the road to be included in the 911 system, both of which were accomplished.

There was testimony that, although the county treated the drive as a county road, its dedication had never been formally accepted and that it was not, in fact, a county road.

■■ An individual asserting an easement by prescription has the burden of proof to show by a preponderance of the evidence that use of the roadway has been adverse to the owner and his predecessors in title under claim of right for the statutory period. *Wallner* v. *Johnson*, 21 Ark. App. 124, 730 S.W.2d 253 (1987). In contesting the chancellor's decision, appellants contend that the Yorks' and the Gingers' use of the drive was permissive and did not ripen into an adverse right. In so arguing, appellants, as well as the dissent, rely on the familiar rule of law spoken of in the decision of *Manitowoc Remanufacturing, Inc.* v. *Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991), where it is said:

> Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. Mere permissive use of an easement cannot ripen into an adverse claim without clear action placing the owner on notice.

*Id.* at 275-276, 819 S.W.2d at 278 (citations omitted). However, appellants and the dissent fail to acknowledge that the supreme court has long recognized a variation in the general rule. In *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S.W.2d 281 (1954), the court, after reviewing the leading decisions in Arkansas concerning prescriptive rights, stated the exception to the rule as follows:

> A consideration of the many opinions of this court regarding the acquisition of a right-of-way over lands makes it clear, in our opinion, that no real conflict exists. All our opinions are in harmony on one point, *viz.*: Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right.

*Id.* at 446, 266 S.W.2d at 283. One of the cases discussed and quoted at length by the court in *Fullenwider* was *McGill* v. *Miller*, 172 Ark. 390, 288 S.W. 932 (1926), a case factually similar to the one at bar. There, the court affirmed the chancellor's grant of a prescriptive easement in an alley to owners of adjoining property. The court said:

> It is true that the use originated as a permissive right and not upon any consideration, but the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of adjoining property as a matter of right and not as a matter of permission. In other words, the length of time and the circumstances under which the alley was opened were sufficient to establish an adverse use so as to ripen into title by limitation.

> It is true that the testimony of McGill establishes the fact that, after he became the owner of the property in 1910, the alley was frequently used, but that there was an embankment at the mouth of the alley, so that it was difficult to use it; and he also testified that one of his neighbors asked permission to dig down the alley and use it for the purpose of hauling manure. He stated that he agreed for his neighbor to so use the alley, but his own testimony shows that the alley was open and plainly marked prior to that time, and was occasionally used. His testimony is not sufficient to show that, prior to that time, during the years that the alley had been open, the use of it had merely been permissive, nor that those who used the alley after he acquired the property did so merely by permission.

> We give full recognition to the principle of law established by the numerous decisions cited in the brief of appellants, to the effect that a permissive use cannot ripen into a legal right merely by the lapse of time, but we think that the evidence is sufficient to show that this use was made of the alley as a matter of right and in hostility to the right of the original landowner to close the strip and prevent its use. The open way was for the especial benefit of the owners of adjoining property, and is the only convenient access that they have to their properties, and this confers upon them such special right as enables them to maintain a suit to prevent an obstruction. We think that the chancellor was

correct in holding that there was an easement for the use of the alley, and that neither McGill or Todd had the legal right to close it.

*Id.* at 394, 288 S.W. at 934. Given the principles upon which the *McGill* court based its opinion, it was not critical to the decision that there was no evidence of overt activity on the part of the adverse users alerting the owner of their adverse claim. Indeed, this was one of the complaints asserted in the dissenting opinion. *See also Armstrong* v. *McCrary*, 249 Ark. 816, 462 S.W.2d 445 (1971).

In *Zunamon* v. *Jones*, 271 Ark. 789, 610 S.W.2d 286 (Ark. App. 1981), we rejected the notion that it was necessary in all cases that persons claiming a prescriptive easement must openly communicate their intention to use the road adversely before a permissive use can ripen into an adverse right. Relying on *Fullenwider* v. *Kitchens, supra,* and *McGill* v. *Miller, supra,* we recognized that the length of time and the circumstances under which the roadway was opened and used is sufficient to establish an adverse claim, when those circumstances indicate that the true owner knew or should have known that the road was being used adversely. *See also White* v. *Zini,* 39 Ark. App. 83, 838 S.W.2d 370 (1992).

The determination of whether the use of a roadway is adverse or permissive presents a question of fact. *Wallner* v. *Johnson, supra.* In the case under consideration, it was shown that the driveway was the only means of access to the home. A review of the testimony reveals that, based on the location of the drive, both the Yorks and the Gingers assumed that they owned the driveway, with the Yorks' belief being based in large part on Mr. Harris's representation that the driveway was theirs. The testimony taken as a whole thus strongly indicates that their use of the drive was under a claim of right, as was found by the chancellor. It was also firmly established that Mr. Harris had actual knowledge of their adverse use of the road and, despite that knowledge, he never denied them access to the drive. We also regard as significant the testimony that Mr. Harris sought permission from Mr. Ginger in the effort to dedicate the road to the county, as well as the testimony that he asked Mr. Ginger to contribute to the cost of paving the road. Given the circumstances of this case, we cannot say that the chancellor's decision is clearly against the preponderance of the evidence, or that it is contrary to settled law.

■ On this point, appellants further argue that the chancellor erred in failing to limit the purposes for which appellants can use the road. This issue was not raised at trial and we decline to address it for the first time on appeal. *Barr v. Ark. Blue Cross*, 297 Ark. 262, 761 S.W.2d 174 (1988).

■ Appellants next argue that the chancellor erred in finding that appellees and their predecessors in title had adversely possessed the strip of land south of the driveway because of Mrs. Harris's testimony that she planted a row of trees there which she watered and tended on a regular basis until 1986. However, there was conflicting evidence as to who maintained this strip of property. Appellees presented testimony that the Yorks and those hired by them mowed the strip, and Mr. Ginger testified he was the only one who mowed the strip from the time he bought the property until the appellants requested that he stop doing so in 1992. There was also evidence that an electric light pole was located on the strip prior to the Gingers' purchase of the property. It was said that the switch for the light was inside the Gingers' house and that they paid for the electricity to the pole. As with the first issue, we cannot say that the chancellor's decision is clearly against the preponderance of the evidence.

Affirmed.

JENNINGS, C.J., and COOPER, ROBBINS and MAYFIELD, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I dissent from this decision because I believe that the chancellor's findings that the appellees acquired a prescriptive easement of a driveway and title by adverse possession to a six-foot strip of adjacent property were clearly against the preponderance of the evidence and, therefore, erroneous. The chancellor made those findings despite uncontradicted proof that the area was originally owned by appellants' predecessors in title who had given appellees' predecessor in title permission to use the driveway and the area adjacent to it. The permissive use never ripened into *adverse* use.

The evidence was that a couple named Harris owned a thirteen-acre parcel of land that included the house in which they lived in the southern part of the parcel. The Harrises decided to build

another house for themselves in the northern section of the tract, but while they still lived in their old house which they were renting from its purchaser (the Yorks) they arranged for a driveway to be cut that would serve their new house. The Harrises sold their house and two acres of land *south* of the driveway to a couple named York, and consented to the Yorks' use of the driveway after the sale even though the driveway was not property included in the sale. In fact, the property line for the two acres that the Yorks bought was 6 feet south of the driveway. A fence ran almost 10 feet north of the driveway. From 1979 until 1986, the Yorks lived in the house south of the driveway and used the driveway with the Harrises' permission.

Following Mr. York's death in 1984, Mrs. York sold the two acres to appellees (Ginger) on July 1, 1986. The Gingers received a survey that clearly showed the boundary to their property as 10 feet south of the private driveway that the Harrises constructed, and that the driveway was fully within the Harrises' property. However, the Gingers did not examine their survey until 1989, after a question arose between Mr. Ginger and Mr. Harris about ownership of the driveway and the property adjacent to it.

In 1991 the Harrises' heirs sold the north eleven-acre tract to appellants (Fieldses). The Fieldses received a survey that accurately depicted the boundary line between their property and that of the Gingers and depicted the accurate location of the private driveway within their property. When the Fieldses learned that the Gingers were not only using the private drive but apparently claiming the property on either side of it, they notified the Gingers by letter from their attorney stating their claim to the property described in their deed from the Harris heirs, and stating that any use of the driveway and property on either side of it by the Gingers was permissive as it had been for nearly 15 years. The Gingers then filed suit to quiet title in the property south of the fence (north of the driveway) by adverse possession, or declaring themselves owners of a permanent easement covering that property and enjoining the Fieldses from interfering with their use of it. The Gingers later amended their complaint to assert ownership under the doctrine of boundary by acquiescence. The Fieldses filed a counterclaim to quiet title that the Gingers denied.

The chancellor found that there was insufficient proof: (1) that the fence north of the private driveway became the boundary line

by acquiescence; (2) that there was an oral agreement that the fence would constitute the boundary line; (3) that the Gingers acquired an easement by necessity along the driveway; or (4) that they had acquired the tract between the northern edge of the driveway and the fence by adverse possession. However, the chancellor found that the Gingers acquired an easement in the driveway by prescription and title to the six-foot strip immediately south of the driveway by adverse possession. The chancellor also quieted title in the Fieldses in the property north of the southern edge of the driveway, subject to the nonexclusive easement to the driveway in favor of the Gingers. This finding was reached by tacking the Gingers' use of the area between the northern edge of their property and the southern edge of the driveway with that of their predecessors, the Yorks.

The elements for a prescriptive easement are essentially the same as for adverse possession except that exclusivity is not required. A claim for prescriptive easement, however, requires something more. The claimant to a prescriptive easement must prove some circumstance or act *in addition to, or in connection with*, the use which indicates that the use was *not merely permissive* because mere permissive use of an easement cannot ripen into an adverse claim without *clear action* placing the owner on notice. *Manitowoc Remanufacturing* v. *Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991)(emphasis added). A line of cases running from *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S.W.2d 281 (1954) to *White* v. *Zini*, 39 Ark. App. 83, 838 S.W.2d 370 (1992) establishes that in order to establish a prescriptive easement, the true owner must either know or be presumed to know of the adverse character of the claimant's possession based on the facts and circumstances of the use. An alternative line of cases holds that the claimant must take *affirmative* steps to put the owner on notice of an adverse claim to support a prescriptive easement. *See, e.g., Manitowoc, supra; Burdess* v. *Arkansas Power & Light*, 268 Ark. 901, 597 S.W.2d 828 (1980); *Wisdom* v. *Thomas*, 253 Ark. 32, 484 S.W.2d 348 (1972); *Harper* v. *Hannibal*, 241 Ark. 508, 408 S.W.2d 591 (1966); *St. Louis Southwestern Ry. Co.* v. *Wallace*, 217 Ark. 278, 229 S.W.2d 659 (1950). Numerous other jurisdictions follow this principle. *See, e.g., Eileen B. White & Associates.* v. *Gunnells*, 263 Ga. 360, 434 S.E.2d 477 (1993); *Carr* v. *Turner*, 575 So.2d 1066 (Ala. 1991); *Dethlefs* v. *Beau Maison Dev. Corp.*, 511 So.2d 112 (Miss. 1987); *Lorang* v. *Hunt*, 107 Idaho 802, 693 P.2d 448 (1984); *Anson* v. *Tietze*, 354 Mo. 552, 190 S.W.2d 193 (1945);

*Moore* v. *Day*, 199 App. Div 76, 191 N.Y.S. 731 (1922), aff'd. 235 N.Y. 554, 139 N.E.732 (1923); *see generally* 25 Am. Jur. 2d *Easements and Licenses* §§ 65-67 (1996).

The majority ignores this second line of cases, citing instead cases that base their holdings on alternative reasonings. *See, e.g., McGill, supra; Fullenwider, supra.* In virtually every case cited by the majority, the original owner was attempting to block or somehow obstruct the easement in question. These cases also rely heavily on the fact that the easements therein were used by great numbers of people, usually the general public. *See, e.g., McGill, supra; Fullenwider, supra; Zunamon, supra.* Here, by contrast, the easement stems from an express oral agreement between two neighbors. Moreover, the Fieldses are merely seeking a resolution of the status of the easement. The record reveals no intent to block the Gingers from continuing to use the driveway. To the contrary, the record shows that the Fieldses wrote the Gingers and declared that use of the driveway was acceptable but by permission.

It is easy to reconcile these two lines of cases given the facts of the instant case. The cases relied upon by the majority that hold an owner must know or be presumed to know the adverse character of the claimant's possession are simply inapposite here because the use by the Ginger's and their predecessors in title was never adverse. Additionally, Mrs. Harris' statement that Mr. Harris was aware of a potential prescriptive easement claim as to the driveway cannot be imputed as some form of concession. Adverse possession and prescriptive easements are fact-intensive legal concepts often misunderstood by lawyers and laypersons alike. The law of both prescriptive easements and adverse possession looks to the use of the challenger, not the perceived effect of that use by the owner. In particular, the hostile character of possession is determined by the occupant's own views, actions and intentions and not those of his adversary. *Potlatch Corp.* v. *Hannegan*, 266 Ark. 847, 586 S.W.2d 256 (1979). When the general public makes use of an easement (*see* the cases cited by the majority *infra*) or the owner intentionally places a barricade across the easement, the owner is hard pressed to deny knowledge or the presumption of knowledge of adverse use. Neither of these relevant conditions existed in this case, nor did the parties contend they existed.

In *Harper* v. *Hannibal, supra*, the supreme court cited with approval a Washington case stating that no prescriptive right is

created unless a *"distinct and positive assertion . . . of a right hostile to the owner* [has been asserted]" and the claimant has held possession thereafter for the statutory seven-year period (emphasis added). 241 Ark. at 513, 408 S.W.2d at 593. In fact, a stricter standard applies before a permissive easement will be held converted into a prescriptive easement. Where entry upon the owner's land is permissive, the statute of limitations for a prescriptive easement will not begin to run against the legal owner *until an adverse holding is declared, and notice of such change is brought to the knowledge of the owner.* St. Louis Southwestern Ry. Co. v. Wallace, 217 Ark. 278, 229 S.W.2d 659 (1950)(emphasis added). The challenger has the burden of proving a prescriptive easement. *Burdess* v. *Arkansas Power & Light,* 268 Ark. 901, 597 S.W.2d 828 (1980).

The Gingers can point to no overt activity nor any distinct and positive assertion that clearly put the Fieldses or their predecessors on notice concerning their claim of right to a hostile use of the driveway, or the six-foot strip of land south of it that the chancellor found that they have acquired by adverse possession. The only thing that the Gingers did concerning the driveway was to continue to use it the same way that their predecessors (the Yorks) had used it. The Yorks were clearly on notice that the driveway and adjacent property six feet south of it belonged to the Harrises and that they were only permitted to use it. The Harrises and the Yorks mowed the grass south of the driveway. The Harrises planted a row of trees south of the driveway, and Mrs. Harris watered and cared for the trees on a regular basis until she left in 1986. The Gingers brought their suit less than seven years afterwards. Although Mr. Ginger testified to planting Bradford pear trees in 1987, he admitted that his trees were planted along the true property line. That conduct does not constitute clear notice to the true owner of a hostile use consistent with Arkansas law.

The majority cites *Zunamon* for the proposition that one claiming a prescriptive easement need not "communicate" their intent to use the easement adversely. This correctly states the law but misses the point. It not the communication that matters; rather, as *Zunamon* points out, it is the "length of time" and the "circumstances under which the [easement] . . . was used" that establishes adverse use. 271 Ark. at 791, 610 S.W.2d at 288. It is precisely the circumstances surrounding the Gingers' and Yorks' use that distinguish this case. It did not begin, nor did it ever become, adverse.

Counsel for the Gingers was asked at oral argument what conduct by the Gingers or their predecessors amounted to a clear assertion of a hostile claim of right to the disputed area (either the driveway as to the prescriptive easement or the six-foot area south of it as to the property acquired by adverse possession). Counsel was unable to identify any point in time when anything was done that amounted to a hostile claim of right to the property, let alone any time that the required hostile claim was made known or presumed known to the true owners.

The adverse possession claim also fails because the Gingers failed to show the requisite intent on their part or the Yorks' part to hold the six-foot strip adversely. In a claim of adverse possession, intention is a controlling factor, and intention to hold must be clear, distinct and unequivocal. *Dillaha v. Temple*, 267 Ark. 793, 590 S.W.2d 331 (1979). Mrs. York's testimony showed equivocal intent. She admitted that she did not know where the true boundary was and only "figured" the fence was the line. Mr. Ginger admitted that he did not know where the property line was until 1989 when the first possibility of a boundary line disagreement arose with Mr. Harris. Only then did Ginger look closely at his survey. Any intent on the Gingers' part to hold adversely was formed in or after 1989, not 1979 as the Gingers claim by virtue of tacking the Yorks' purported adverse use to their own use.

This is not a case of deferring to the findings made by the chancellor. The clear law of Arkansas for decades has required proof of an adverse claim of ownership or right of possession before a claim based on prescriptive easement or adverse possession can be upheld. The appellees concede that their use of the driveway and the property south of it was permissive, and that it was consistent with the permissive use made of that area by their predecessors. Appellees should not acquire title by adverse possession or a prescriptive easement based upon permissive use.

Finally, the policy effects of this case are deeply troubling. Now, an obliging landowner who wants to cordially grant a neighbor some right to use the owner's land will be disinclined towards such a neighborly gesture. If merely granting permissive use in one's land starts the clock for adverse possession or a prescriptive easement without proof of adverse use by the grantee, then adjoining landowners in Arkansas now have a strong disincentive against allowing their neighbors to use their land for any purpose, however

useful. Here, a land owner built a driveway on his own land, subdivided the land but allowed his new neighbor to continue using the driveway indefinitely, and now has been declared to have lost exclusive possession of the driveway plus title to the land next to it. His neighbor's permissive use somehow and at some point — though no one can say when or by what conduct — transformed itself into adverse use. Equity has not been done in this case; rather, we have, in effect, penalized the idea of the good neighbor.

Permissive use cannot ripen into a legal right merely by lapse of time. *McGill v. Miller,* 172 Ark. 390, 288 S.W.932 (1926). The only difference between the use of the driveway in 1979 and its use in 1992 is the lapse of time. Rather than standing decades of law regarding adverse possession and prescriptive easements on its head, the chancellor should be reversed, the case should be remanded, and the chancellor should be instructed to enter a decree in favor of the appellants.