Anthony JOHNSON *v.* Danny K. JONES
and Connie S. Jones

CA 98-57                                             977 S.W.2d 903

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered November 4, 1998

*Baxter, Jensen, Payne & Young,* by: *Ray Baxter,* for appellants.

*Kemp, Duckett, Spradley & Curry,* by: *Stephanie Houston Angel* and *Hal Joseph Kemp,* for appellees.

JOHN F. STROUD, JR., Judge. Anthony Johnson, Tony Johnson, Mark Mills, and Virgil Taylor, as members, trustees, deacons, and elders of Unity Missionary Baptist Church, an unincorporated religious society, and all other members of Unity Missionary Baptist Church appeal from a decree of the Saline County Chancery Court holding that appellees Danny Jones and Connie Jones established a prescriptive easement across land owned by the Church. We hold that the chancellor's decision is not clearly erroneous.

Appellees own a tract of land adjacent to property owned by the Church. Appellees' driveway, their only access to a county road, crosses the Church's property and connects to its parking lot. Appellees' house was built around 1974 by Harold and Carolyn

McClendon. According to appellants, the Church's members voted to give the McClendons permission to traverse the Church's property for access to their home. In early 1984, the McClendons sold their property to Ronald Eaton. In July 1984, Mr. Eaton sold this tract of land to appellees.

In 1996, appellees attempted to make some improvements to their property but were unable to acquire financing for the project without receiving a recordable written easement from the Church. After appellants refused to give a written easement, appellees filed this action to establish a prescriptive easement over the Church's property.

At trial, Mr. Eaton testified that, when he acquired the property, he assumed that the gravel driveway came with the land and that he had not asked anyone for permission to use it. He stated that, while making repairs to the property in 1984, he used the driveway and no other access to it approximately four days a week. He also said that he had thought that he had conveyed the right to use the driveway along with the land in his deed to appellees. He stated that he had trusted the abstract company in this regard and would not have paid what he did for the property if he had not believed that there was a recorded right of access to it.

Appellee Danny Jones testified that this driveway is the only access to the property that he has ever used. He also stated that he had assumed that he had acquired the right to use the driveway along with the property and had not believed that he needed permission to use it. He said that no one from the Church had ever indicated that he needed permission to use this driveway nor had anyone from the Church given him permission to do so. He further testified that appellees' visitors and everyone providing services to their house have used this driveway. He also said that he had maintained the driveway and kept it clear of debris. He said that he had put gravel on it and that Edwin Johnson, a member of the church, had graded it for him. He said that a garbage truck had once damaged a side of the driveway and that he had repaired it in the presence of Church members. He testified that appellees had continuously used the driveway since 1984 in the presence of Church members and that no one from the Church had ever

mentioned the subject to him. On cross-examination, Mr. Jones admitted that he and his wife had started attending the Church shortly after moving into their home; although his wife had joined the Church, he had not. He stated that they had stopped attending services there four or five years ago.

Appellant Anthony Johnson testified that, originally, he had owned this property and that he had been a member of the Church when the McClendons had acquired it. He stated that the McClendons had sought the Church's permission to use the road to their property; this permission was granted by the consent of the Church's members. He admitted, however, that no one from the Church had ever informed Mr. Eaton or appellees that they needed or had permission to travel across the Church's property for ingress or egress to their land. He admitted that he had never attempted to limit anyone's use of the driveway and that, until this dispute arose, he had not even known that Mr. Eaton had once owned the property.

Appellant Mark Mills also testified that, although he had observed appellees and their guests using the driveway, he had never done anything to prevent such use and had never personally communicated to appellees that their use was permissive. He also testified that, although he had been a member of the Church for six years, he had never had contact with Mrs. Jones at the Church.

In their first and second points on appeal, appellants challenge the sufficiency of the evidence and argue that appellees and their predecessors in title were simply using the driveway with the Church's permission. In their third point on appeal, appellants argue that Mrs. Jones's use of the driveway could not have been adverse to the Church's interest because she was a member of the Church for a period of time.

■ ■ Prescription is the acquisition of title to a property right which is neither tangible nor visible (incorporeal hereditament) by an adverse user as distinguished from the acquisition of title to the land itself (corporeal hereditament) by adverse possession. *Neyland v. Hunter*, 282 Ark. 323, 668 S.W.2d 530 (1984). Although we do not have a statute setting forth the length of time for the ripening of a prescriptive easement, for many years the

supreme court has considered the period for acquiring a prescriptive right-of-way as analogous to the statutory seven-year period for the acquiring of title by adverse possession and has held that both require seven years. *Id.* Unlike adverse possession, however, prescriptive use need not be exclusive. *Id.*

One asserting an easement by prescription must show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. *Manitowoc Remanufacturing, Inc. v. Vocque,* 307 Ark. 271, 819 S.W.2d 275 (1991); *Fields v. Ginger,* 54 Ark. App. 216, 925 S.W.2d 794 (1996). Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. *Manitowoc Remanufacturing, Inc. v. Vocque, supra; Fields v. Ginger, supra.* Permissive use of an easement cannot ripen into an adverse claim without clear action placing the owner on notice. *Manitowoc Remanufacturing, Inc. v. Vocque, supra; Fields v. Ginger, supra.* For use by permission to ever ripen into title, the claimant must put the owner on notice that the way is being used under a claim of right. *Massey v. Price,* 252 Ark. 617, 480 S.W.2d 337 (1972). *Accord Wallner v. Johnson,* 21 Ark. App. 124, 730 S.W.2d 253 (1987). When one has sufficient information to lead him to a fact, he is put upon inquiry and shall be deemed cognizant of that fact. *Diener v. Ratterree,* 57 Ark. App. 314, 945 S.W.2d 406 (1997).

In *Fields v. Ginger, supra,* we noted that the supreme court has long recognized a variation in the general rule of law spoken of in *Manitowoc Remanufacturing, Inc. v. Vocque.* Quoting *Fullenwider v. Kitchens,* 223 Ark. 442, 266 S.W.2d 281 (1954), we stated that previous decisions on this issue can be reconciled:

> Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right.

54 Ark. App. at 221, 925 S.W.2d at 797. We rejected the notion that it was necessary in all cases that persons claiming a prescriptive easement must openly communicate their intention to use the road adversely before permissive use can ripen into an adverse right and recognized that the length of time and the circumstances under which the roadway was opened and used are sufficient to establish an adverse claim, when those circumstances indicate that the true owner knew or should have known that the road was being used adversely. Citing *White v. Zini*, 39 Ark. App. 83, 838 S.W.2d 370 (1992), we held that the use may ripen into an easement by prescription even if the initial usage began permissively, if it is shown that the usage continued openly for the statutory period after the landowner knew that it was being used adversely, or under such circumstances that it would be presumed that the landowner knew it was adverse to his own interest.

The determination of whether the use of a roadway is adverse or permissive is a question of fact. *Stone v. Halliburton*, 244 Ark. 392, 425 S.W.2d 325 (1968); *Fields v. Ginger, supra; Wallner v. Johnson, supra*. A chancellor's finding with respect to the existence of a prescriptive easement will not be reversed by this court unless it is clearly erroneous. *Kelley v. Westover*, 56 Ark. App. 56, 938 S.W.2d 235 (1997). In fact, former decisions are of little value on the factual issue of whether a particular use is permissive or adverse. *Williams v. Fears*, 248 Ark. 486, 452 S.W.2d 642 (1970); *Stone v. Halliburton, supra*.

Appellants argue that the chancellor was required to find that the McClendons' use of the property was permissive simply because Mr. Johnson testified to that fact without contradiction. Even though the McClendons' use of this driveway was with the permission of the Church, it does not change the outcome of this case. The use of this driveway by Mr. Eaton and appellees was sufficient for the prescriptive easement to occur.

It is clear that the driveway is the only means of access to appellees' home. Appellees, and their predecessor, Mr. Eaton, assumed that they had acquired a right to use the driveway along with title to their property. *Hicks v. Flanagan*, 30 Ark. App. 53, 782 S.W.2d 587 (1990), is a boundary-line dispute case, but the

court's holding that the intent to retain possession under an honest belief of ownership is adverse possession also seems appropriate here. Appellants were aware that appellees had acquired title to the property in 1984 and that they had consistently used and maintained the driveway since that time. Appellants were also charged with notice that Mr. Eaton had purchased this property before he sold it to appellees. It is clear from the testimony that appellees and Mr. Eaton had used the driveway under a claim of right for over twelve years and that appellants had never attempted to limit their access or to inform them that their use was permissive. The Church cannot assume that permission requested and given to a landowner is imputed to all subsequent owners of such land. Given these circumstances, we cannot say that the chancellor's decision is contrary to settled law or that his findings are clearly erroneous.

██ Appellants also argue that, because Mrs. Jones was a member of the Church for a period of time, her use of the driveway could not have been adverse to the Church's interest. Although appellants cite *Neyland v. Hunter, supra,* for this contention, that case does not support their argument. In *Neyland v. Hunter,* the supreme court recognized that, unlike adverse possession, prescriptive use need not be exclusive. Appellants also cite Arkansas Code Annotated section 18-11-106 (Supp. 1997), which only deals with adverse possession claims. In fact, appellants have cited no authority that supports their argument that Mrs. Jones's membership in the Church should defeat her claim of a prescriptive easement. Assignments of error unsupported by convincing argument or authority will not be considered on appeal. *Rogers v. Rogers,* 46 Ark. App. 136, 877 S.W.2d 936 (1994). Even if we were to consider this issue on the merits, we would not be persuaded by appellants' argument. The testimony reveals that Mrs. Jones did not join the Church until after appellees had already acquired title to their property and had begun their use of the driveway. Certainly, one can easily infer that Mr. Jones's maintenance of the driveway was also done on his wife's behalf. Therefore, the Church was on notice that Mrs. Jones was using the driveway adversely to its interest before she joined it. Accordingly, we find no merit in appellants' third point on appeal.

■ However, it is necessary that we remand this case so that the chancellor may amplify and correct the decree by adding a precise legal description of the easement (that part of the driveway that appellees have actually used). In the decree, this easement is described as a line for which no width is given. When a chancellor's decree does not describe a prescriptive easement with sufficient specificity so that it can be identified solely by reference to the decree, we may remand for the chancellor to amend the decree and provide the easement's legal description. *See Rice v. Whiting*, 248 Ark. 592, 452 S.W. 2d 842 (1970); *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997).

Affirmed in part; remanded in part.

NEAL, MEADS, and ROAF, JJ., agree.

GRIFFEN and CRABTREE, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. Although the majority would affirm the chancellor's decision declaring a prescriptive easement across a driveway owned by the appellants' (deacons of Unity Baptist Church), I believe that appellees failed to prove adverse use of the property as required by our case law. Therefore, I respectfully dissent.

Danny and Connie Jones purchased a tract of land adjacent to property owned by Unity Church in April 1984. Appellees' property was purchased from Ronald Eaton, who had purchased the tract from Harold McClendon in February 1984. McClendon and his wife had purchased the tract from Anthony and Mary Johnson in December 1973. Anthony Johnson is a deacon of Unity Church.

In Saline County, access to appellees' property is possible by crossing through the Unity Baptist property and then crossing property owned by International Paper Company to reach Unity Road. A driveway existed through those properties when McClendon acquired the tract from the Johnsons. Anthony Johnson testified that the Unity Baptist Church voted to permit McClendon to use that driveway. However, appellee Danny Jones did not know that the driveway was not his land (despite the fact that it was located on the church property and was not described

in his deed from Eaton). He and his wife used the driveway from the time they acquired their property without objection from the church. He testified that he made minor repairs to the driveway (replacing gravel). When he and his wife attempted to obtain financing on their home to make some repairs, they learned that the financing institution would not extend credit because they did not have legal right to use the driveway. Jones obtained an easement from International Paper. Unity Baptist indicated that it would consent to continued use of the driveway, but would not agree to an alienable easement. Jones then sued the church elders, claiming a prescriptive easement in the driveway through the church property. The chancellor granted the prescriptive easement, holding that because appellees and their predecessors in title had continuously used the driveway for at least twenty-three years, had not asked permission to use the road from the church elders, and because the elders had not acted to prevent that use or object to it, the continuous use was adverse use for purposes of satisfying the requirement for a prescriptive easement.

Whether one follows the reasoning of our decisions dating to *Fullenwider v. Kitchens*, 223 Ark. 442, 226 S.W.2d 281 (1954), which hold that, to establish a prescriptive easement, the true owner must either know or be presumed to know of the adverse character of the claimant's possession based on the facts and circumstances of the claimant's use, or the alternative line of cases dating to *Manitowoc Remanufacturing v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991), which hold that the claimant must take affirmative steps to put the true owner on notice of an adverse claim to support a prescriptive easement, Arkansas case law clearly requires that the claimant prove *adverse* use for seven years. There must be a "distinct and positive assertion . . . of a right hostile to the owner." *Harper v. Hannibal*, 241 Ark. 508, 408 S.W.2d 591 (1966).

Although appellees, as claimants, had the burden of demonstrating adverse use, they presented no proof that they ever asserted a right to use the driveway that was adverse to the church. They simply argued that they were entitled to a prescriptive easement because they and their predecessors in title had used the driveway continuously and openly without objection or permis-

sion from the church. If the law of prescriptive easement required no more than this, I could join the majority and vote to affirm the chancellor. However, the law of prescriptive easement requires that a claimant prove open, continuous, *and adverse* use. None of our cases provide that adverse use is demonstrated merely by proof of continuous and open permissive use, whether by the claimant or by the claimant's predecessors in interest. The fact that there were successive users between the initial permissive use to Eaton and the use exercised by appellees is immaterial given that none of the successive users claimed or exercised an adverse use as to appellants. Yet that is the upshot of the decision announced today.

It is difficult to understand how continuous permissive use of a driveway can rise over time to a prescriptive right when that use involved no activity that was hostile to the right of the owner of the property that the driveway traverses. Here we have no proof that appellees erected a fence, gate, or other barrier across the driveway so as to suggest an interest in it that was something other than that of a permissive user. The fact that appellees made minor repairs to the driveway certainly was not an adverse action to appellants; after all, appellees used the gravel driveway without charge, interruption, or disagreement. That they made minor repairs to a driveway they used for free demonstrates nothing more than common courtesy, not that they held or claimed a legal right to the land across which they drove every day. Despite appellees' argument that the repairs evidenced adverse use, the repairs were no more adverse to appellants' interest than would be the act of having a flat tire fixed on a vehicle that one has been permitted to use by another.

Contrary to appellees' argument, appellants did not acquiesce in an adverse use by not objecting to the use of the driveway across their property. There was no acquiescence because the use was never adverse. Acquiescence arises when the true owner fails to object or assert his rights after having received notice of an adverse claim or use, not merely because the owner's land is used by others in a way that is not adverse for more than seven years. The reasoning employed by appellees and now validated by the majority opinion creates an adverse use from mere prolonged permissive use. This is a clear departure from the time-honored principle

that permissive use cannot ripen into a legal right merely by lapse of time. *See McGill v. Miller*, 172 Ark. 390, 288 S.W. 932 (1926).

I consider it especially anomalous that appellees — who profess that they did not know that the driveway in question was not their land — are now deemed to have intended to deprive the true owner of that land of its use by using the driveway the very way that had been permitted by appellants. Neither appellees nor the majority opinion explain how mere persistent ignorance over time rises in law or logic to clear, distinct, and unequivocal evidence of an intent to exercise an adverse interest or right over property that belongs to another as required by our supreme court. *See Dillaha v. Temple*, 267 Ark. 793, 590 S.W.2d 331 (1979). That persistent ignorance can be successfully massaged into a prescriptive right is the antithesis of equity.

I would reverse the chancellor and am authorized to state that Judge CRABTREE joins in this opinion.