FULLENWIDER *v.* KITCHENS.

5-375                                      266 S. W. 2d 281

Opinion delivered April 5, 1954.

*McKay, McKay & Anderson,* for appellant.

*W. H. Kitchens, Jr.,* for appellee.

WARD, J. This appeal challenges the decision of the trial court which held that appellee had acquired by prescription a road over lands belonging to appellants. Appellants and appellee are adjoining landowners, with appellee's land located south and east of appellants' land. Appellants bought their land in 1946 from W. C. Dean who owned the land for many years previous thereto. Appellants do not live on their land which is mostly woodland, a small portion of which has at times been in cultivation. Appellee's land is what is known as the old "Polk Place" and was the home of William Polk for many years. For some 35 years the occupants of appellee's land have used a road which runs north from the dwelling approximately 248 feet, thence west approximately 130 feet, and thence northwesterly approximately 524 feet (across appellants' land) to intersect with a public road which runs in a northeasterly direction, and

is designated as road "A." The road just described as used by appellee and her predecessors is designated as road "B."

In the latter part of 1948 appellants built a fence along the east side of public road "A" across road "B." After some conversation with appellee in which no definite agreement was reached appellants in 1951 placed a gate where the fence crossed road "B." Later appellants again obstructed road "B" and this suit was instituted by appellee to remove said obstructions and to reopen the road.

Upon final hearing, after both sides had introduced their testimony, the chancellor found "that the plaintiff (appellee) proved that road 'B' . . . has been established by prescription for many years." The chancellor also stated that "it would be equitable to allow the defendants (appellants) to furnish an alternate route, no more inconvenient to the plaintiff, and the defendants would be allowed 60 days in which to furnish such alternate route if they so desire . . ." Appellants did not choose to furnish the alternate route, and have prosecuted this appeal.

Appellants' principal contention for a reversal is based upon the principle of law announced in the case of *Boullioun* v. *Constantine, et al.,* 186 Ark. 625, 54 S. W. 2d 896, to the effect that the use of a passageway over uninclosed lands is presumed to be permissive and not adverse to the owners of the land over which the passageway is used. As stated by appellants, this same principle was announced in the case of *Birdwell* v. *Arkansas Power & Light Company,* 191 Ark. 227, 85 S. W. 2d 712, and in *LeCroy* v. *Sigman,* 209 Ark. 469, 191 S. W. 2d 461. In the case under consideration the testimony shows that road "B" ran through the timber land, and there is no contention that this land was fully inclosed. The evidence does show that many years ago there was a fence on the southern portion of the land and there is evidence to the effect that people at different times went onto the land to work. On the whole however we agree that the facts

and circumstances in this case make applicable the rule of law heretofore stated.

This court, however, in dealing many times with the acquisition of passageways over land, has recognized what might be deemed a variation or exception to the rule before mentioned. One such case is *McGill* v. *Miller,* 172 Ark. 390, 288 S. W. 932, where the general rule was recognized and an exception thereto was stated in this language:

"It is true that the use originated as a permissive right and not upon any consideration, but the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of adjoining property as a matter of right and not as a matter of permission. In other words, the length of time and the circumstances under which the alley was opened were sufficient to establish an adverse use, so as to ripen into title by a limitation." (Citing other cases.)
In this same case the court further said:

"We give full recognition to principle of law to the effect that a permissive use cannot ripen into a legal right merely by lapse of time, but we think the evidence is sufficient to show that this use was made of the alley as a matter of right, and in hostility to the right of the original owner to close the strip and prevent its use."

In the case of *Kimmer* v. *Nelson,* 218 Ark. 332, 236 S. W. 2d 427, where a question similar to the one here involved was under consideration this court recognized that permissive usage of a passageway may become adverse usage, or that the permissive usage may be considered abandoned, by lapse of time. This court after noting the passageway was across wooded and undeveloped land but had been used for a period of 40 years without question or objection, stated:

"In these circumstances the original restriction in the nature of a permissive use in favor of particular persons was abandoned through the long lapse of time."

The reason for the rule that a passageway over un-inclosed and unimproved land is deemed to be permissive is sound and also easily understandable, as was explained in the *Boullioun* case, *supra*. It assumes that the owner of such land in many instances will not be in position to readily detect or prevent others from crossing over his land, and, even if he did, he might not enter any objection because of a desire to accommodate others and because such usage resulted in no immediate damage to him. Also in such instances the landowner would probably have no reason to think the users of the passageway were attempting to acquire any adverse rights. On the other hand there would be no reason or basis for such inference of permission on the part of the landowner if someone tore down his fence or destroyed his crops by reason of such usage. These acts alone would be calculated to put the landowner on notice that others were using his land adversely to his own interest and right of occupation. The right of a person to acquire a passageway over the land of another is somewhat analogous to the right to acquire land by 7 years adverse possession. The headnote in the case of *Clay* v. *Penzel*, 79 Ark. 5, 94 S. W. 705, reads:

"Private Way—Adverse Use. A private way over the land of another may be acquired by open, continuous and adverse use for seven years under a claim of right." The opinion, written by Judge RIDDICK, states:

"It is clear from the evidence that this strip has been continually used by plaintiffs as an alley or passageway for ten or twelve years at least before it was obstructed by the defendant."

The headnote in *Scott* v. *Dishough*, 83 Ark. 369, 103 S. W. 1153, reads:

"Adverse Possession—Alley.—Where the owners of adjacent property have used an alley openly, continually, peacefully and adversely for seven years they acquire an easement therein."

After commenting on the evidence in the short opinion Judge BATTLE, speaking for the court, said:

"This is sufficient to vest them with an easement therein; seven years adverse possession being sufficient for that purpose." (Citing other cases.)

A consideration of the many opinions of this court regarding the acquisition of a right-of-way over lands makes it clear, in our opinion, that no real conflict exists. All our opinions are in harmony on one point, *viz.*: Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowedge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right.

In our opinion, in the case under consideration, the weight of the testimony supports the finding of the chancellor that appellee and her predecessors in title used road "B" for more than seven years after appellants and their predecessors in title knew or should have known that the road was being used adversely. The great weight of the testimony shows that road "B" has been in use as a well defined roadway since 1917 or 1918 and there is testimony that it was in use prior to said dates. Appellants' predecessors in title had knowledge of this usage without any objection on their part and they also knew that this was the only outlet appellee and her predecessors had to the county highway. The evidence shows that work was done on this road from time to time and that it was used as a passageway not only by appellee and her predecessors but by the general public. Alva Cloud, 59 years old, said that road "B" has been in existence ever since he could remember, that he traveled the road all that time and that it was open for wagon travel as a common road. R. E. Polk, 73 years old, said road "B" had been open at least 35 years and that others used the road regularly. L. E. Cloud, age 62, gave testimony to the same effect. Ben Watkins, age 73, knows that the road has been open for more than 20 years. S. L. Black,

age 85, knows the road has been in existence over 45 years—that he traveled the road before his daughter was born 48 years ago. W. C. Dean, who owned appellants' land from 1917 to 1946, said road "B" was in existence in 1917 and that he went over the road in a buggy in 1912.

From the above testimony it clearly appears that the owners of appellants' land have known of the existence and continuous usage of road "B" at least since 1917 or a period of over 30 years. Thus the weight of the testimony supports the chancellor's finding that the road has been used by appellee and the public openly and adversely for more than 7 years and that the constant usage of said road for some 40 years under the circumstances of this case overcomes the presumption that said usage was permissive.

The contention is also made by appellants that appellee has abandoned any rights she may have acquired to road "B" because of non-use, but this contention is not supported by the evidence. Appellants call attention to the fact that they closed road "B" some four or five years before this suit was filed by appellee, and cite *Clinton Chamber of Commerce* v. *Jacobs*, 212 Ark. 776, 207 S. W. 2d 616. In the cited case we held that where a fence had been maintained for seven years by the landowner across a roadway acquired by prescription the easement would be terminated. It is undisputed that here appellants had not maintained an obstruction for seven years prior to the filing of this suit by appellee.

No error appearing, the decree of the trial court is affirmed.