Brad SMITH *v.* Russell O. LOYD and Emogene T. Loyd

CA 99-264                                         5 S.W.3d 74

Court of Appeals of Arkansas
Division I
Opinion delivered November 17, 1999
[Petition for rehearing denied December 22, 1999.]

*Boswell, Tucker & Brewster,* by: *Dennis J. Davis,* for appellant.

*Eudox Patterson,* for appellees.

A NDREE LAYTON ROAF, Judge. Brad Smith appeals a decree entered by the Saline County Chancery Court finding that Russell O. Loyd and Emogene T. Loyd were entitled to a prescriptive easement over lands owned by Smith. On appeal, Smith argues that the chancellor erred in granting the prescriptive easement because the Loyds did not prove that they had used the property adversely for seven years. We affirm.

Since 1972, the Loyds have owned a 61.6-acre tract of land that lies due west of property now owned by Smith. Both properties are bordered on the north by land owned by William Brennan. Smith's property is unimproved and, except for a period of time beginning in the 1980s when a cable was stretched across the road by Brennan and later in 1991 when Smith placed a fence across it, unenclosed.

The only access to the Loyds' property is by a dirt road across Smith's land. The dirt road extends off of Nickel Bill James Road, a short county road that connects with Highway 5. When the Loyds became interested in selling their property, they determined that they needed to formally establish their right to access it. On December 11, 1997, the Loyds petitioned for a temporary

restraining order to enjoin Smith from barricading the roadway and a judgment declaring that they had a prescriptive easement. In his answer, Smith asserted that use of the road by the Loyds was permissive.

At the hearing on the petition, Russell Loyd conceded that Smith had never barricaded the road. Loyd further testified that he used the road about once a week for the twenty-six years that he owned the property and that his tenants also used the roadway. According to Loyd, when Smith bought his property in 1991, Smith installed a gate across the road and Loyd had to get a key from Brennan to access the property. Loyd claimed that the key did not work satisfactorily so he provided the lock that is currently in use on the gate. He further stated that the cable had been removed before Smith bought the land and that there was no other enclosure. Emogene Loyd also testified that she and her husband had used the dirt road to access their property for as long as they owned it. She also testified that she was a real estate broker and that their motivation for establishing the prescriptive easement was to make the property more marketable. She contended that without the easement, prospective buyers could not buy title insurance.

William Brennan, the adjoining landowner, testified that the dirt road was used for a number of years, perhaps decades, by hunters, fishermen, and "kids doing doughnuts and parties." According to Brennan, sometime in the early 1980s, after discussing with Russell Loyd the desirability of keeping people away from the river bottom area, Brennan and his son stretched a cable across the road to discourage the "partying." Brennan claimed, however, that the lock on the cable did not work and that it was "mostly for show."

Seventy-one-year-old Merle Holloway, who formerly worked for the county road department beginning in 1962, testified that until the cable was placed across the road, twice a year he would run the county road grader down the dirt road as far as the Loyds' property. He also testified that the road in question existed since 1950.

At the conclusion of the testimony, the parties stipulated that there were no livestock or cattle on Smith's property. After the hearing, the chancellor declared that the Loyds had established their

entitlement to a prescriptive easement over Smith's property. On appeal, Smith argues that the trial court erred in granting a private prescriptive easement to the Loyds because they had not established that they had used the property adversely to the rights of the owner for a period of seven years. Smith contends that the Loyds never showed that they engaged in any activity that would have placed him on notice of their claim. Citing *Burdess v. Arkansas Power & Light Co.*, 268 Ark. 901, 597 S.W.2d 828 (1980), he asserts that use of a roadway over unenclosed and unimproved land is deemed to be permissive and there must be some overt activity on the part of the user that an adverse use and claim of right is being asserted. Smith notes that the testimony established that prior to placing the cable across the road or the erection of the gate in 1991, the land was open, unenclosed and unimproved, and therefore he benefits from the presumption that use of the road by anyone, including the Loyds, was permissive. Consequently, he contends, the absence of proof that the Loyds performed some other activity besides driving up and down the road is fatal to their claim of a prescriptive easement. Further, citing *Hoover v. Smith*, 248 Ark. 443, 451 S.W.2d 877 (1970), Smith argues that when the wire was stretched across the road in the 1980s, the public's right to use the land was extinguished. These arguments are not persuasive.

■ Prescription is the acquisition by an adverse user of title to a property right which is neither tangible nor visible, as distinguished from the acquisition of title to the land itself by adverse possession. *Johnson v. Jones*, 64 Ark. App. 20, 977 S.W.2d 903 (1998). The supreme court has considered the period for acquiring a prescriptive right-of-way as analogous to the statutory seven-year period for the acquiring of title by adverse possession and has held that both require seven years. *Id*. Unlike adverse possession, however, prescriptive use need not be exclusive. *Id*. One asserting an easement by prescription must show by a preponderance of the evidence that his or her use has been adverse to the true owner and under a claim of right for the statutory period. *Id*. The determination of whether the use of a roadway is adverse or permissive is a question of fact, and a chancellor's finding with respect to the existence of a prescriptive easement will not be reversed by this court unless it is clearly erroneous. *Id*.

■ In *Kimmer v. Nelson*, 218 Ark. 332, 236 S.W.2d 427 (1951), where a roadway had been used by a succession of owners

for forty years, the supreme court held that the original restriction in the nature of a permissive passageway across the land of another may be deemed to have been abandoned if such use is not objected to by the landowner after a long passage of time. In *Fullenwider v. Kitchens*, 233 Ark. 442, 266 S.W.2d 281 (1954), the supreme court applied the principle announced in *Kimmer* to uphold a lower court's finding that use of a road through wild and unimproved land for over thirty years overcame the presumption that use of the land was permissive. The instant case is clearly analogous to *Fullenwider*. Here there is testimony that the roadway in question was used without complaint by the owner of record for nearly forty years before Smith acquired title to the property and erected the gate. Under the rationale propounded by the supreme court in *Fullenwider v. Kitchens, supra,* there is little basis for this court to conclude that the permissive-use presumption has not been overcome in the instant case.

Because we affirm on this basis, we need not address Smith's further argument that placing the wire across the road in the early 1980s resulted in the abandonment of any public prescriptive easement.

Affirmed.

HART, J., and HAYS, S.J., agree.