The Honorable Preston Scroggin State Representative 59 Marshall Road South Vilonia, AR 72173-9335
Dear Representative Scroggin:
I am writing in response to your request for my opinion on the following two unrelated questions:
 1. If utility lines were originally laid outside the boundaries of the right of way, then can a city, after a period of seven years, automatically acquire the right of way?
 2. Can a municipality run city vehicles and/or pick-up trucks on off-road fuel?
RESPONSE
With respect to your first question, although there is no Arkansas authority squarely on point, assuming the misplacement occurred inadvertently under a claim of right, I believe the answer is probably "yes." I believe the answer to your second question is likewise "yes," so long as the vehicles are being used for official purposes.
Question 1: If utility lines were originally laid outside the boundariesof the right of way, then can a city, after of period of seven years,automatically acquire the right of way?
I should note at the outset that you have not provided me with the specific circumstances giving rise to your request. Lacking this information, I can only provide you with a summary of the relevant law and an opinion as to the result assuming certain facts. You have further not informed me whether your request arises from an actual dispute between a city and a private property owner. If it does, please be advised that I am prohibited by statute from engaging in the private practice of law. A.C.A. § 25-16-701. I do not intend, and I request that you do not offer, the following as authority in any litigation that may relate to your request.
I gather from your reference to "seven years" that you are asking whether the city might acquire a prescriptive easement over the property by continued use. As the court noted in Smith v. Loyd, 68 Ark. App. 127,130-31, 5 S.W.3d 74 (1999):
 Prescription is the acquisition by an adverse user of title to a property right which is neither tangible nor visible, as distinguished from the acquisition of title to the land itself by adverse possession. Johnson v. Jones, 64 Ark. App. 20, 977 S.W.2d 903 (1998). The Supreme Court has considered the period for acquiring a prescriptive right-of-way as analogous to the statutory seven-year period for the acquiring of title by adverse possession and has held that both require seven years. Id. Unlike adverse possession, however, prescriptive use need not be exclusive. Id. One asserting an easement by prescription must show by a preponderance of the evidence that his or her use has been adverse to the true owner and under a claim of right for the statutory period. Id. The determination of whether the use of a roadway is adverse or permissive is a question of fact, and a chancellor's finding with respect to the existence of a prescriptive easement will not be reversed by this court unless it is clearly erroneous. Id.
 In Kimmer v. Nelson, 218 Ark. 332, 236 S.W.2d 427 (1951), where a roadway had been used by a succession of owners for forty years, the supreme court held that the original restriction in the nature of a permissive passageway across the land of another may be deemed to have been abandoned if such use is not objected to by the landowner after a long passage of time. In Fullenwider v. Kitchens, 223 Ark. 442, 266 S.W.2d 281 (1954), the supreme court applied the principle announced in Kimmer to uphold a lower court's finding that use of a road through wild and unimproved land for over thirty years overcame the presumption that use of the land was permissive.
See also Owners Association of Foxcroft Woods v. Foxglen, 346 Ark. 354,57 S.W.3d 187 (2001) (public's right to use drive ripened into prescriptive easement since appellants did nothing for fifteen years).
In Brumley v. Entergy Services, Inc., 2000 WL 1745223 (Ark.App.) (unpublished), the Arkansas Court of Appeals offered the following analysis regarding a public utility's available defenses to a claim that it has encroached onto private property:
 Entergy argued in its answer to the complaint for ejectment that it never sought, obtained, or required the Brumleys' consent or permission because, under Arkansas law, it was well within its rights as a public utility provider to place certain improvements on the Brumleys' property. Specifically, Entergy relies on Ark. Code Ann. § 18-15-503
for authority to support its actions. Paragraph (a)(1) of this section provides that corporations organized under the laws of this state for the purpose of generating, transmitting, and supplying electricity for public use has [sic] the right to construct, operate, and maintain lines, and paragraph (b) provides that, if it is not secured by consent, contract, or agreement, it [sic] must proceed to procure condemnation of the property. Entergy also contends that the issues of consent and revocation are moot points because the statute of limitations has run and Entergy now has a prescriptive easement. The Supreme Court has considered the period for acquiring a prescriptive right-of-way as analogous to the statutory seven-year period for the acquiring of title by adverse possession and has held that both require seven years. Smith v. Loyd, 68 Ark. App. 127, 5 S.W.3d 74 (1999). In the case at bar, Entergy has been openly utilizing a portion of the Brumleys' land for over twenty years under a claim of right, and therefore, the statute of limitations bars any action in law or equity pursuant to Ark. Code Ann. § 18-61-101 (1987).
Although I am unaware of any Arkansas case law directly holding that a municipality, as opposed to a public utility, can acquire a prescriptive easement based upon use exceeding seven years, this conclusion would appear to be fully consistent with the court's holding in Brumley. It is further consistent with the following general statement of property law relating to prescriptive easements:
 Any person capable of receiving a grant of an easement may acquire one by prescription. While legally organized or political entities may acquire an easement by prescription, the general public is incapable of receiving a grant and hence, according to some courts, cannot acquire a prescriptive easement; nor can one acquire title by adverse user [sic] where his [sic] user is a member of the public, in common with all others exercising and enjoying the privilege of use, since the use in such a case is not exclusive. Some courts, however, have held that the general public is capable of acquiring an easement by prescription. . . .
25 Am. Jur. 2d, Easements and Licenses § 46 (1996) (emphasis added; footnotes omitted); accord John W. Bruce James W. Ely, Jr., The Law ofEasements and Licenses in Land § 5.09[4] (Warren, Gorham Lamont 1988) ("It is well settled that municipalities and other local governmental units, as distinct from the general public, may acquire an easement by prescription.") (footnote omitted). Regardless, then, of whether the public in general might be entitled to a prescriptive easement, it appears that a city might acquire such a property interest through adverse use under a mistaken claim of right for the requisite period. See, e.g.,Washington Land Co. v. Potomac Ridge Development Corp., 767 A.2d 891
(Md.App. 1999) (describing as a fact question "whether the city's use of the [water and sewer] lines was adverse and the city obtained a prescriptive easement"); Sprague v. Estate of Haslett, 2001 WL 1231848 (Mich.App.) (unpublished) (affirming a ruling that a township had acquired a prescriptive easement over a parcel of land by long using it as a park and as an access to a lake); Olech v. Village of Willowbrook,
2002 WL 1058843 (N.D. Ill.) (unpublished) (acknowledging that if a municipality has a prescriptive easement over a public highway, it may install utilities within that easement or use it for any other public purpose); Daley v. Town of Swampscott, 421 N.E.2d 78, 82 (Mass. 1981) ("There is no doubt that a municipality may acquire an easement by prescription to use land located within its limits for a specific public purpose."); Hollywood, Inc. v. Zinkil, 403 So.2d 528, 535 (Fla.Dist.Ct. App. 1981) ("[I]t is well-settled that a public entity may obtain fee simple title by adverse possession.").
I should address your suggestion that the city by use exceeding seven years might "automatically" acquire a right of way. As discussed above, I indeed believe the city's property interest would arise "automatically" under the circumstances set forth in your request. However, notwithstanding this fact, the record would not reflect the city's property interest without some formal action, whether by regulation of the planning commission, which is empowered to "provide for the dedication of all rights-of-way to the public," A.C.A. § 14-56-417(b)(2)(B), by ordinance of the city council, which is empowered to "adopt and enforce plans for the coordinated, adjusted, and harmonious development of the municipality and its environs," A.C.A. § 14-56-402, or by judgment following an action for declaratory judgment or ejectment.
Finally, assuming I am correct in speculating that the city would already have acquired a prescriptive easement under the terms of your hypothetical, I do not believe the city's continued use of the right of way would implicate the takings clauses of U.S. Const. art. 5 and Ark. Const. art. 2, § 22. See Ark. Op. Att'y Gen. No. 2001-239 (discussing the constitutional implications of conditioning development upon granting utility easements). The premise underlying the concept of prescription is that the owner of property has relinquished by inaction over time what would otherwise have been his property rights. Logic suggests that a property owner who has relinquished an easement cannot later characterize use of the easement as a taking.
Question 2: Can a municipality run city vehicles and/or pick-up trucks onoff-road fuel?
Yes, so long as the use is for official purposes.
Subchapter 2 of chapter 56 of title 26 of the Arkansas Code (Repl. 1997 Supp. 2001) deals with the excise taxation of distillate special fuel — a category that includes the fuels that would be used to power municipal vehicles and pickup trucks. See A.C.A. § 26-56-102(9). Section26-56-224 of the Code provides in pertinent part:
 (a) All distillate special fuel sold, used, or utilized in this state for off-road purposes, and not for the purpose of fueling motor vehicles, shall be dyed by the person or entity authorized to dye such fuels in accordance and in conformance with P.L. 103-66 and the Internal Revenue Service Regulation made and promulgated pursuant to P.L. 103-66 which are in effect on April 6, 1995.
 (b) All distillate special fuel which has not been dyed in accordance with subsection (a) of this section and which is sold, used, or utilized in this state for any purpose or purposes shall be taxable at the total per-gallon tax rates as set out in this chapter.
As this passage reflects, dyed motor fuel is intended for off-road use and is not subject to the tax imposed on undyed fuel used to power on-road vehicles.
However, this general rule is subject to various exceptions set forth at A.C.A. § 26-56-225:
 Dyed distillate special fuel shall not be used or utilized in the fuel supply tank of any motor vehicle with the exception of:
(1) State and local government vehicles;
(2) Local transit buses;
(3) Intercity buses;
(4) School buses;
(5) Vehicles owned by aircraft museums;
(6) Vehicles used by nonprofit educational organizations; and
(7) Red Cross vehicles;
 as such vehicles and buses are defined in Pub.L. 103-66 and the Internal Revenue Service Regulations made and promulgated pursuant to Pub.L. 103-66 which are in effect on April 6, 1995.
(Emphasis added.) As this statute reflects, the proscription against the on-road use of dyed fuel does not apply to local government vehicles as defined by federal law. See 26 U.S.C. §§ 4221 (relating to sales to a state or local government for "exclusive use") and 6427 (relating to fuels not used for taxable purposes). However, as I noted in Ark. Op. Att'y Gen. 99-290, using a local government vehicle for non-governmental transportation" may result in failure to meet the federal definition."See Rev. Rule 62-99 (addressing the use of school buses for non-governmental uses).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh