SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-69

| | |
|---|---|
| JAMES STRANGE and KAREN STRANGE<br><br>APPELLANTS<br><br>V.<br><br><br>MARY K. REED TRUST<br>APPELLEE | **Opinion Delivered** May 28, 2014<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT<br>[NO. CV-2009-218]<br><br>HONORABLE MICHAEL A. MAGGIO, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

This lawsuit concerns a prescriptive easement granted in favor of the Mary K. Reed Trust over real property owned by James Strange and Karen Strange in Van Buren County. The Reed family had been using a roadway across the Stranges' property to access their own forty-acre tract since at least 1970. After several years of continued disputes between the parties regarding this use, the Trust filed a complaint against the Stranges on July 6, 2009, in an attempt to establish a prescriptive easement. The Stranges bring this appeal from the Van Buren County Circuit Court's order finding that the Trust had established an easement by prescription across their property. We find no clear error, and we affirm the circuit court's order.

The disputed roadway is located on the Stranges' property, which the Stranges acquired in June 1999 from Mr. Strange's father, who had owned the property since at least the 1970s. The Reed family had owned property adjoining the Stranges' land since 1970, and

SLIP OPINION

Mary Reed conveyed it to the Mary K. Reed Trust on June 16, 2000. The disputed roadway, which is the approximate width of a two-axle vehicle, connects the Trust's property with County Road 231, or Angus Road, and is the only means of vehicular access to the property. The parties agree that the Reeds have used the roadway to access their property for years, long before either the Stranges or the Trust acquired title from their predecessors. A gate was installed blocking the roadway in the 1970s, but both the Stranges and the Reeds had a key, and the Reeds' use appears to have been permissive at least for some time after the gate was installed. The parties dispute when the use became adverse but agree that, after Mr. Strange acquired the property from his father in 1999, he made it clear to the Reeds that he did not want them using the roadway over his property and that he considered their use adverse.

On July 6, 2009, the Trust filed a complaint against the Stranges seeking to establish an easement by prescription in the roadway. After a hearing, the circuit court entered an order on December 16, 2011, finding that the Trust had established an easement by prescription. We dismissed an appeal from that order, holding that the order was not final because it did not contain a legal description of the easement. *Strange v. Mary K. Reed Trust*, 2012 Ark. App. 592. The circuit court entered a final order on October 28, 2013, again finding the existence of a prescriptive easement across the Stranges' property, which was more particularly described in an exhibit attached to the order. Specifically, the court found that the roadway was the only means of access to the Trust's property and that the Reeds and their invitees had used and maintained it on a regular basis to access the property since at least 1965. The court also found that the use became adverse either in 1999 or 2000 after the Stranges acquired the property.

2

The court determined that the Trust beneficiaries continued to use the roadway and this use "remained adverse for a period of greater than seven years." The Stranges filed this appeal.

We review matters that sound in equity de novo on the record with respect to questions of both law and fact, but we will not reverse a trial court's fact findings unless they are clearly erroneous. *Baker v. Bolin*, 2012 Ark. App. 141, at 1. A finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been committed. *Ward v. Adams*, 66 Ark. App. 208, 210, 989 S.W.2d 550, 551 (1999). In reviewing a trial court's findings of fact, the appellate courts give due deference to the trial court's superior position to determine witness credibility and the weight to be accorded their testimony. *Steele v. Blankenship*, 2010 Ark. App. 86, at 10, 277 S.W.3d 293, 298.

On appeal, the Stranges contend that the circuit court's decision is clearly erroneous because the Trust failed to show that its claim of right was adverse for seven consecutive, continuous years. The Stranges argue that the court found that the adverse use began in 1999 or 2000 and that they interrupted the Reeds' use in 2005 and 2006 by placing hay bales, rocks, and logs in the road, therefore preventing seven continuous years of adverse use by the Reeds. They also point to Mr. Strange's testimony that the Reeds did not use the road from 2004 through 2008 and to the Reeds' testimony that they used the road primarily during hunting season.

We turn to the governing law. A person not in fee possession of land may obtain a



prescriptive easement by operation of law in a manner similar to adverse possession:

> Where there is usage of a passageway over land, whether it began by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right.

*Baker v. Bolin*, 2012 Ark. App. 141, at 2 (quoting *Fullenwider v. Kitchens*, 223 Ark. 442, 446, 266 S.W.2d 281, 283 (1954)). The determination of whether a use is adverse or permissive is a fact question, and former decisions are rarely controlling on this factual issue. *Id.*

Several members of the Reed family testified regarding their use. John Hughes Reed, Mary Reed's son, testified that he was sixty-eight years old at the time of the hearing and that he had been familiar with and used the property since 1970. He testified that his father had grown up near the property and had purchased it to hunt on. John said that he had six brothers and sisters and that they and their children had permission to use the Trust's property. He said that he knew of no other way to access the property than the disputed roadway and he had never accessed it another way. He said that his family put a trailer and a small cabin on the property around 1970 and that they had been using the roadway since that time. He testified that, about fifteen years before the hearing, he called Mr. Strange when he discovered that the gate across the roadway was blocked. Mr. Strange told him that he could not have access. John claimed that he continued accessing his property using the roadway in spite of the call and the no-trespassing signs posted at the gate.

Terry Don Reed, one of John's nephews, testified that he was forty-one years old and had been going to the property about ten times a year for as long as he could remember. He

4

knew of no way to access the property other than the disputed roadway. He said that, sometime in the "early nineties," Mr. Strange told him not to access the property because "he had no right" to use the road. The road had a gate with a lock and some logs in the way. He testified that he continued to access the Trust's property using the roadway after that time. Finally, he testified that two or three years before the hearing, he and two of his brothers used his tractor and a backhoe to grade and ditch the road. He said he often did maintenance on the road, mostly with shovels, picks, and hand tools.

Joshua Reed, who was thirty-four years old at the time of the hearing, testified that he had been going to the property since he was three. He said Mr. Strange told him not to use the roadway in approximately 2000 but he continued to access the property using the road in spite of Mr. Strange's admonition. He said that he continued to use the road every other weekend until approximately two years before the hearing. The hearing took place October 21, 2011. He said that he and his dad, his uncles, his brothers, and his cousins would remove hay bales in front of the gate to use the road. They also cut a link out of the chain on the gate and put a "quick link" in it.

Chad Reed testified that he was thirty-six years old, had been going to the Reed family property since he was three, and had always used the roadway to access the property. He said that Mr. Strange's father told him eleven years before that his son had purchased his land and that he did not want the Reeds on the roadway. Chad testified that he continued to use the road to access the Reed property. He said that he remembered seeing a lock on the gate in 1999 and cutting the lock to use the roadway. He testified that he had used the

SLIP OPINION

property, and the roadway, almost every weekend from 1999 through 2008.

Finally, Mr. Strange testified that after he acquired the property in 1999, his father told the Reeds many times not to use the roadway. He testified that he put a lock on the gate in 2004 and, when he discovered that the Reeds had cut the lock, he put hay bales in front of the gate in 2006. He testified that the Reeds did not use the road from 2004 through 2008. He later testified that he knew "for a fact" that his father told the Reeds numerous times since the nineties not to use the roadway. He said, "They've accessed this property for over seven years against mine and my dad's will."

Our de novo review of all this testimony convinces us that the circuit court's finding that the Trust established an easement by prescription is not clearly erroneous. The Reeds testified that the use became adverse, at the latest, in 2000 and that they had used the roadway in spite of Mr. Strange's attempts to prevent it from that time until at least 2008 or 2009, more than seven years. Even Mr. Strange testified that the Reeds had used the property against his and his dad's will for more than seven years. Although Mr. Strange did testify that the Reeds did not use the roadway between 2004 and 2008, his own testimony that he put hay bales in front of the gate in 2006 because the lock had been cut suggests that the Reeds did use the roadway between 2004 and 2008. Moreover, all of the Reeds testified that they had used the property regularly between 2000 and at least 2008. We give great deference to the circuit court in matters of witness credibility. *Steele*, 2010 Ark. App. 86, at 10, 277 S.W.3d at 298.

Accordingly, we affirm the circuit court's order finding a prescriptive easement in the



roadway across the Stranges' property.

Affirmed.

GLOVER and WHITEAKER, JJ., agree.

*Jerry D. Patterson*, for appellants.

*Jensen Young & Houston, PLLC*, by: *Brent Houston*, for appellee.