Cite as 2022 Ark. App. 17

# ARKANSAS COURT OF APPEALS

SPECIAL DIVISION

**No.** CV-21-125

| | |
|---|---|
| PHILLIP J. JACKSON | **Opinion Delivered** January 12, 2022 |
| APPELLANT | APPEAL FROM THE MONROE COUNTY CIRCUIT COURT [NO. 48CV-19-114] |
| V. | |
| EARL ROSS DOWNS AND RAYMOND ABRAMSON | HONORABLE CHALK S.MITCHELL, JUDGE |
| | AFFIRMED |
| APPELLEES | |

## ANNABELLE IMBER TUCK, Special Judge[1]

Phillip Jackson brings this appeal from a judgment of the Monroe County Circuit Court awarding Raymond Abramson an easement across his property. Specifically, the circuit court found that Abramson had acquired an easement by necessity, an easement by implication, and a prescriptive easement across Jackson's property. We affirm the circuit court's finding that Abramson had acquired a prescriptive easement across Jackson's property.

Since 1991, Raymond Abramson has owned ninety-three acres of rural, undeveloped land (the Abramson Property) in Monroe County. This land has been in the Abramson family since 1895. It is heavily wooded and primarily used recreationally for hunting, hiking,

---

[1]Appellee Raymond Abramson is a judge on the Arkansas Court of Appeals. For that reason, all current court of appeals judges have recused themselves from this case, and this appeal has been decided by a special panel of retired judges.

fishing, and timber production. In June 2019, Abramson leased his property to appellee Earl Downs for hunting purposes, and thereafter Downs visited the property frequently.

Adjacent to Abramson's property is 240 acres of land owned by appellant, Phillip Jackson, which he primarily uses for farming. Jackson's land shares a property line with Abramson's on the north, east, and south. Jackson obtained title to his land by warranty deed in 1986.

The dispute in this case arose after Earl Downs was denied access to the Abramson Property in October 2019. On October 31, Downs went to visit the Abramson Property to prepare for a hunt. As he did every time before, he planned on using the road that crossed over Jackson's property. However, Jackson had barricaded the road with a gate and an excavator, effectively preventing Downs from accessing the Abramson Property from the east.

Downs subsequently filed a complaint alleging that he had an easement by prescription, necessity, or implication, and he requested an "Ex-Parte Temporary Injunction"against Jackson seeking access to the Abramson Property for hunting purposes. The circuit court granted the Ex-Parte Temporary Injunction without a hearing and subsequently served it on Jackson. Thereafter, Jackson filed a motion to dismiss and requested a hearing. Downs later filed an amended complaint, which added Raymond Abramson as a party.

On February 27, 2020, the circuit court held a trial on the amended complaint. At the trial, Abramson testified about his family's use of the blocked road both prior to and during his ownership. He said that the blocked road was the only road his family and others

2

had ever used to access the property. He indicated that his father was a farmer who used to rent what is now Jackson's property and that, as a child, he would ride out to the farm with his older brother. He testified that he even remembers driving a tractor out there.

Further, Abramson testified about how he used the blocked road during his ownership, which began in 1991. He said that he goes to the land "at least once a year if not multiple times every year, some years more than others." He testified that he goes whenever he wants and he waves to people in Jackson's fields, and they wave back. Abramson said that each fall, he and his wife enjoy walking the property and viewing the wildlife. Abramson conservatively estimated that he has been to the property around one hundred times.

Abramson offered evidence that others use the road as well. He said that Pat Gerlach, who leased the property for hunting purposes from 2008 to 2018, used the blocked road to access the property. He said that scrap dealers had traversed the blocked road when they came to purchase his father's old farming equipment and that loggers had used the blocked road to haul timber.

Jackson testified that the road he blocked existed when he purchased his land in 1986. However, he described the road as being nothing more than a trail that was mostly impassable except by tractor. He said that, over the years, he had improved the road so that he could better work the land for farming. He testified that he made these improvements for his own benefit and without consultation with others in the area. He further testified that in 1995 or 1996, he posted no "trespassing signs" and installed a cable across the road because "[he] was having a bunch of people steal stuff and tearing [his] road up." Moreover, Joe Jackson,

who is Phillip Jackson's son, testified that thirty-gallon barrels were also placed in the road.

Downs testified about his use of the blocked road. He said that he accessed the Abramson Property via that road at least fifty times. He said that on two or three occasions, he waved at people in Jackson's fields. Moreover, Downs testified about a courtesy phone call with Joe. He said that five or six days before the road was blocked, he called Joe to introduce himself. He told Joe that he was leasing the Abramson Property, and he also provided him with a description of his truck. Joe told Downs that he knew somebody had been coming and going because he could see the tracks.

Pat Gerlach, who obtained the hunting lease immediately prior to Downs, testified that he also utilized the blocked road. Gerlach said that he first used the road in 1968 when he was helping farm the land as a teenager. He further stated that he used the road to haul deer stands in and out of the Abramson Property when he hunted the land from 2008 to 2018.

Following the hearing and after visiting the property in person, the court took the case under advisement. Both parties submitted posthearing briefs and proposed findings of fact and conclusions of law. On November 4, 2020, the circuit court issued an order finding that Abramson had acquired a prescriptive easement, an easement by implication, and an easement by necessity over Jackson's land. The circuit court also ordered that Downs had a right to use the easement. Jackson now appeals, challenging the circuit court's findings.

This court reviews equity matters de novo on the record but will not reverse a finding of the lower court unless it is clearly erroneous. *See Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs.*, 346 Ark. 354, 57 S.W.3d 187 (2001). A finding is clearly erroneous when,

4

although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id*. at 361, 57 S.W.3d at 192. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Carson v. County of Drew*, 354 Ark. 621, 128 S.W.3d 423 (2003). Disputed facts and determinations of witness credibility are within the province of the fact finder. *Id*. at 624–25, 128 S.W.3d at 425.

Jackson challenges the circuit court's finding that Abramson had established an easement by prescription. One asserting an easement by prescription must show by a preponderance of the evidence that his or her use has been adverse to the true owner and under a claim of right for the statutory period. *Johnson v. Jones,* 64 Ark. App. 20, 977 S.W.2d 903 (1998). Where there is usage of a passageway over land, whether it be by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right. *Fullenwider v. Kitchens,* 223 Ark. 442, 266 S.W.2d 281 (1954). A prescriptive easement, once attached, is permanent and irrevocable. *Carson*, 354 Ark. at 626–27, 128 S.W.3d at 427. For reversal, Jackson argues that the circuit court erred in finding that Abramson had established a prescriptive easement because Abramson failed to prove his use was adverse to Jackson.

The crux of Jackson's argument is that because the disputed land is wild, unenclosed,

and unimproved, there is a presumption that Abramson's use of the land was permissive. Our supreme court has held that use of wild, unimproved land such as Jackson's is presumed permissive until the persons using the land for passage, by their open and notorious conduct, demonstrate to the owner that they are claiming a right of passage. *Carson*, 354 Ark. at 626, 128 S.W.3d at 426–27. This must come in the form of some overt activity that puts the owner on notice that the use is adverse. It is Jackson's position that Abramson's overt activities were not sufficient to overcome this presumption. However, Jackson's argument fails to acknowledge that permissive use can ripen into adverse use when the use continues openly for seven years after the landowner or his predecessors know the use is adverse or if they, under the circumstances, are presumed to know the use is adverse.

After reviewing the evidence, we hold that the circuit court did not clearly err by finding that Abramson rebutted the presumption that his use was permissive and that Jackson knew or should have known that Abramson was using the road under a claim of right. Abramson testified that he has been using the road for over fifty years. Likewise, Gerlach testified that he used the road back in 1968. From this testimony, it is clear that the road existed prior to Jackson's purchase of his property in 1986 and that people were using it.

Further, Jackson testified that when he bought his property in 1986, he could tell that people had been using the road because it was "wallowed out." It was at this point that Jackson was put on notice that somebody was using the road. Jackson did nothing to stop this use until 1995 when he began posting his property and blocking the road with a cable and plastic barrels. Even after Jackson posted his property and blocked the road with a cable and barrels, Abramson's use was open and continuous. Abramson testified that the posted

6

signs "were a non-issue to me." He ignored the signs, cable, and barrels; continued to use the road; and continued to have his lessees use the road for a period of over twenty years. Considering Abramson's use, his lessees' use, and the length of time that passed, Jackson knew or should have known that Abramson's use was adverse. Given these circumstances, we cannot say that the circuit court's findings are clearly erroneous.

Having reached the conclusion that Abramson is entitled to an easement by prescription, we need not consider Jackson's arguments regarding whether the circuit court erred in its finding of an easement by necessity or an easement by implication.

Affirmed.

Special Judges GARY ARNOLD and SAM BIRD agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellees.