Cite as 2024 Ark. App. 263

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-22-774

| | |
|---|---|
| BRANDON LEE YARBERY, AS TRUSTEE OF THE BRANDON LEE YARBERY BYPASS TRUST; PAUL E. RUSH AND CAROLYN SUE RUSH, INDIVIDUALLY AND AS TRUSTEES OF THE PAUL E. RUSH AND CAROLYN SUE RUSH FAMILY TRUST OF 2008; MICHAEL SCOTT RUSH; JEFFREY BRIAN RUSH; AND MISTY TEAGUE, INDIVIDUALLY AND AS TRUSTEES OF THE PAUL E. RUSH AND CAROLYN SUE RUSH IRREVOCABLE AND UNAMENDABLE LIVING TRUST OF 2017 | Opinion Delivered April 17, 2024<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, GREENWOOD DISTRICT [NO. 66GCV-21-171]<br><br>HONORABLE GREG MAGNESS, JUDGE |
| APPELLANTS/CROSS-APPELLEES | |
| V. | |
| LAHOMA EDWARDS<br>        APPELLEE/CROSS-APPELLANT | AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

**MIKE MURPHY, Judge**

The appellants are property owners who access their lands by a road that runs across appellee Lahoma Edwards's property. The circuit court granted the appellants a prescriptive easement to use this road, and that easement is the subject of this appeal. Brandon Yarbery owns one tract of land, and the remaining appellants ("the Rushes") own another separate tract of land. On direct appeal, the appellants argue that the circuit court erred by limiting

the scope of the easement it granted them across Edwards's land. On cross-appeal, Edwards argues that the circuit court erred in granting an easement at all. We affirm both the direct and the cross-appeal.

## I. *Introduction*

On September 9, 2021, the Rushes and Yarbery sued Edwards for an easement by prescription. Following a bench trial, the circuit court found that the appellants had a prescriptive easement. In an amended order, the court explained that the easement was so the appellants could access their respective lands for the limited purposes of "ranching, farming, agriculture, hunting, fishing, recreation, and other personal uses (including the construction, maintenance, and use of structures such as barns, hunting lodges, or cabins)," but the easement "does not extend to the Yarbery Property or to the Rush Property for commercial or industrial uses (other than to the extent ranching, farming, hunting, or fishing would be considered such uses) or for single-family or multi-family residential housing."

On direct appeal, the appellants assert that the circuit court erred by not allowing them to use the easement for the purpose of building and accessing single-family homes. On cross-appeal, Edwards argues that the circuit court erred by granting an easement by prescription because the adjacent landowners' use was permissive, not adverse. For the sake of discussion, we will address the cross-appeal first.

## II. *Easement by Prescription*

Lahoma Edwards purchased her land with her late husband, Gerald Edwards, in 1988. When they purchased their land in 1988, the other respective landowners were Kermit

2

McNabb (Rush property) and Patricia Been (Yarbery property). McNabb gifted his land to Foy Brown, and Brown later sold it to the current Rushes' predecessors. Patricia Been was Brandon Yarbery's grandmother. McNabb's title can be traced to 1955, and Been was deeded her tract in 1968.

The road at issue begins at Mount Harmony Road, crosses the Edwards property, crosses the Rush property, and continues into the Yarbery property. There is a gate at the Mount Harmony Road entrance, and all the parties have a way to unlock the gate. Everyone appreciates the gate staying locked, especially Edwards, who does not want unnecessary traffic or trash on her land. The gate, as it stands today, was built by the Edwards family around 1988, but testimony by Foy Brown established that there has been some form of a gate since at least 1940. Foy Brown testified the gate was substantial enough that when he and his twin brother were both eight, they would ride around with McNabb, and it would take both of them to open the gate. Brown explained that he got permission to use the road from McNabb ("it was [McNabb]'s road") and McNabb had others maintain the road for him.

Edwards family members testified that they have never minded allowing the neighbors to use the road to check on their cattle and land. When they put the new gate up in 1988, they locked it with a combination lock and gave the code to the landowners behind the gate. By trial, there were multiple locks on the gate, daisy-chained together, so that several parties and their invitees had their own locks on it.

Yarbery testified that the lock he has on the gate was his grandfather's lock, and it had been there at least twenty years. He said his grandparents "never had permission to go

3

in there" but that his grandfather made modifications to, and did upkeep on, the road. Yarbery has also put thousands of dollars into maintaining and improving the entire roadway, including the Edwards parcel.

There is no disagreement that the Rushes, Yarberry, and their predecessors used the road that crosses Edwards's property to access their own tracts. The issue is whether that use was permissive. The court took the issue under advisement and issued a subsequent written order, which was later amended. That order provided the following detailed findings:

> Plaintiff Yarbery established that the Yarbery Property has been in his family for generations. See Plaintiffs Exhibit D. Plaintiff Yarbery testified that he remembered using the Roadway with his grandfather and prior owner, Buren Been, to access his family property in the mid-1980's when he was young. Plaintiff Yarbery further testified that he has used the Roadway thousands of times over his lifetime and neither he nor his grandparents, to his knowledge, ever asked permission from Defendant to use the Roadway. Plaintiff Yarbery also testified that he has spent at least $5,000.00 to maintain and improve the Roadway and that he and his grandfather maintained the Roadway across Defendant's property without the permission of Defendant.

> Plaintiff Rush obtained his property in 2009. See Plaintiffs Exhibits F-H. Plaintiff Rush testified that he has used the Roadway since purchasing the property and has also helped to maintain it by bush hoggin and clearing fallen trees and limbs. Plaintiff Rush did not believe that he was using the Roadway with permission of Defendant as he believed that he was using it in the same manner as did Foy Brown from whom he purchased the property.

> Foy Brown is a third party who testified at trial. Mr. Brown stated that he began using the Roadway to access the Rush Property as early as the mid-1940's. Mr. Brown testified that the Roadway was used by Kermit McNabb as a regular practice when Mr. McNabb owned the Rush Property. Later, Mr. McNabb gifted the property to Mr. Brown who continued to use the Roadway without any permission from Defendant. Mr. Brown owned the Rush Property from 1998 to 2009 when he sold it to Plaintiff Paul Rush.

On cross-appeal, Edwards argues that the circuit court's findings are not supported

4

by a preponderance of the evidence. She explains that the adjoining landowners' use was permissive because the gate had a lock on it. "Only those with permission—keys to a lock—are allowed"; therefore, the circuit court erroneously found that use by the appellants and their predecessors was adverse.

One asserting an easement by prescription must show by a preponderance of the evidence that his or her use has been adverse to the true owner and under a claim of right for the statutory period. *Johnson v. Jones*, 64 Ark. App. 20, 977 S.W.2d 903 (1998). Where there is usage of a passageway over land, whether it be by permission or otherwise, if that usage continues openly for seven years after the landowner has actual knowledge that the usage is adverse to his interest or where the usage continues for seven years after the facts and circumstances of the prior usage are such that the landowner would be presumed to know the usage was adverse, then such usage ripens into an absolute right. *Fullenwider v. Kitchens*, 223 Ark. 442, 266 S.W.2d 281 (1954).

A prescriptive easement, once attached, is permanent and irrevocable. *Carson v. Cnty. of Drew*, 354 Ark. 621, 626–27, 128 S.W.3d 423, 427. This means that the immediate landowners need not establish their use was adverse; they may be able to establish that their predecessors-in-titles' use was adverse. *Fox v. Alexander*, 2023 Ark. App. 247, at 5, 668 S.W.3d 191, 195 ("When an easement is annexed as an appurtenance to land, whether by express or implied grant or reservation, or by prescription, it passes with a transfer of the land, even though it may not be specifically mentioned in the instrument of transfer.").

The determination of whether the use of a roadway is adverse or permissive is a

question of fact, and a circuit court's finding with respect to the existence of a prescriptive easement will not be reversed by this court unless it is clearly erroneous. *Camp Nine Co. v. Firehunt, Inc.*, 2023 Ark. App. 421, at 9, 676 S.W.3d 284, 290. This is a matter sounding in equity, which we review de novo. *Inman v. Hornbeck*, 2022 Ark. App. 522, at 4, 657 S.W.3d 200, 204.

Edwards contends that the court erred by finding that the use was adverse in light of the forty years of use, maintenance, and improvements. She cites *Baysinger v. Biggers*, 100 Ark. App. 109, 111–12, 265 S.W.3d 144, 145–46 (2007), for the proposition that use alone without objection was not sufficient to put the servient tenement landowner on notice that the use was hostile. Notably, however, *Baysinger* was decided off a record for a temporary injunction, and in reversing, we explained that the record was lacking significantly in any evidence supporting that the use was adverse whatsoever. "Significantly, even [the party claiming the right] did not testify that his use was adverse, hostile, or under a claim of right." *Baysinger*, 100 Ark. App. at 111, 265 S.W.3d at 146.

*Baysinger*, in explaining that "[t]ime alone will not suffice to transform permissive use into legal title," cites *McGill v. Miller*, 172 Ark. 390, 288 S.W. 932 (1926). *Id.* at 112, 265 S.W.3d at 146. But in *McGill*, the court actually held that when an alley had been kept open and used for about nineteen years, coupled with the way the fence was constructed along it, "the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of adjoining property as a matter of right and not as a matter of permission." *McGill*, 172 Ark. at 393, 288 S.W. at 934.

Like *McGill*, the lock could indicate use as a matter of right and not one of permission. And because a determination of whether the use of a roadway is adverse or permissive is a question of fact, we decline to put ourselves in the place of the circuit court to weigh that evidence. *Camp Nine Co.*, 2023 Ark. App. 421, at 9, 676 S.W.3d at 290–91.

Edwards also cites *Hoover v. Smith*, 248 Ark. 443, 451 S.W.2d 877 (1970), for the proposition that erection of a gate "constitutes notice to the public that any travel thereon is by permission of the owner and not as a matter of right to the public or to any individual traveling the road." But that makes the distinction that the notice is to the public. Here, we are concerned with the rights of only a few landowners. This is evident because in the same paragraph, the *Hoover* court explains that "erection and maintenance of a gate by an owner does not give notice that subsequent use of a way across his lands is permissive and not as a matter of right, unless it was maintained as a means of asserting the owner's dominion over the road." 248 Ark. at 446, 451 S.W.2d at 879. This means that we look to the owner's intent in placing and maintaining the gate. *Id.* Here, because there was testimony that there was *always* a gate, and because the intent was to keep the general public out, it stands to reason that the Edwards were asserting dominion over the road only as it relates to the general public.

Instead, the facts here resemble those in *Smith v. Loyd*, 68 Ark. App. 127, 5 S.W.3d 74 (1999), and *Jackson v. Downs*, 2022 Ark. App. 17, 639 S.W.3d 416.

In *Smith*, the appellees asserted they had a prescriptive easement and the appellant argued the use was permissive. The appellant contended that the absence of proof that the

appellees or their predecessors "performed some other activity besides driving up and down the road" was fatal to their claim of a prescriptive easement. 68 Ark. App. at 130, 5 S.W.3d at 76. We reasoned, however, that given that the roadway was "used without complaint by the owner of record for nearly forty years" the permissive-use presumption had been overcome. *Id.* at 131, 5 S.W.3d at 76.

In *Jackson*, the appellant advanced that his land was wild, unenclosed, and unimproved, and therefore, a presumption that the use was permissive existed; but we held that an easement by prescription existed because the appellant should have known that the use was adverse given the use and the length of time that passed. *Jackson*, 2022 Ark. App. 17 at 7. Even permissive use can ripen into adverse use when the use continues openly for seven years after the landowner or his predecessors know the use is adverse or if they, under the circumstances, are presumed to know the use is adverse. *Id.*

Here, it was not erroneous for the court to rely on the length of time of use, maintenance performed, improvements made, and even the existence of a gate and locks in concluding the appellants' use was as a matter of right. We affirm on cross-appeal.

### III. *Scope of Use*

This brings us to the appellants' direct appeal. On direct, the appellants contend that the circuit court erred in prohibiting the use of the easement to build and access single-family homes. In the order, the court explained that the easement it granted was

> for the restricted purposes of accessing their lands for ranching, farming, agriculture, hunting, fishing, recreation, and other personal uses (including the construction, maintenance, and use of structures such as barns, hunting lodges, or cabins), but

8

subject to the perpetual obligation that [the appellants] must secure the Mt. Harmony Gate to protect the interests of the owners of the Edwards Property. The prescriptive easement granted by this Order extends to [appellants'] guests, lessors, licensees, and invitees for the approved land uses. The prescriptive easement granted by this Order does not extend to the Yarbery Property or to the Rush Property for commercial or industrial uses (other than to the extent ranching, farming, hunting, or fishing would be considered such uses) or for single-family or multi-family residential housing.

The court explained that it was fashioning this equitable remedy in accordance with the evidence. *See generally Branscum v. Nelson*, 2022 Ark. App. 354, at 3, 654 S.W.3d 343, 345.

When an easement is acquired by prescription, the nature of the use cannot be changed to render it more burdensome to the servient estate than it was during the prescriptive period. *Williams v. Owen*, 247 Ark. 42, 444 S.W.2d 237 (1969). Because we hold there was no error in establishing an easement by prescription, we evaluate if there was evidence to support the court's finding that the scope of the easement should be limited such that it was.

In the case of an easement by prescription, both its creation and extent are ascertained from the adverse use of the property over a long period of time. *Jordan v. Guinn*, 253 Ark. 315, 485 S.W.2d 715 (1972). A circuit court's findings in this regard will not be reversed unless they are clearly erroneous. *Wallner v. Johnson*, 21 Ark. App. 124, 730 S.W.2d 253 (1987). Here, significant testimony established that the appellants and their predecessors used their properties for farming, ranching, hunting, fishing, and other types of recreation. There was some testimony by Yarbery there may have been a homestead on the Rush property "about a time period that predates probably electricity even getting to Greenwood.

9

. . . Early nineteen hundreds." But from the bench on the motion for rehearing, the court explained that it could not ascertain from the evidence the extent of the use of that site, and

> my intention was that the plaintiffs continue to be able to use their property the way they've used it. And so the question is -- I don't want to limit their use to not being able to have a cabin out there, or you know, a place to stay. That was not my intention is to say you can only go out there for day use. But by the same token, I don't like the idea that you proposed that, well, if they sell me an acre, I'm going to build a house out there. I think that goes beyond the historic use, because otherwise, he can sell me an acre and everybody here an acre, and all of a sudden there's ten houses out there[.]

Where the owner of land has a right to use it, subject to the prescriptive right of another to travel a well-defined designated route across the land, some degree of inconvenience is to be expected and tolerated in the exercise of these overlapping rights, and the conflicts that arise in the exercise of such rights are measured by reasonableness of interference of one with the other. *Massee v. Schiller*, 243 Ark. 572, 579, 420 S.W.2d 839, 843 (1967). What is reasonable or not reasonable depends on the facts and circumstances of each case and is a matter on which the minds of reasonable men may differ. *Id.* A determination of the scope of a prescriptive easement should focus on what a landowner in the position of the owner of the servient estate should reasonably have expected to lose by failing to interrupt the adverse use before the prescriptive period had run. 25 Am. Jur. 2d *Easements and Licenses* § 66, Westlaw (database updated Feb. 2024).

Here, the court was careful to limit the scope of the use of the easement to the historical use of the dominant tenements. Given the record before it and the court's reasoning, we hold that the limitation was not clearly erroneous.

Affirmed on direct appeal; affirmed on cross-appeal.

ABRAMSON, GRUBER, and BROWN, JJ., agree.

BARRETT and HIXSON, JJ., dissent.

**STEPHANIE POTTER BARRETT, Judge, dissenting**. The majority decision continues to confuse—or more accurately, ignore—the elements necessary to prove a prescriptive easement. If the public, the bar, and even the bench look to us for certainty and consistency in application of the law, their look will be in vain. Like its closely related sister "adverse possession," prescriptive easements "are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." *Carson v. Cnty. of Drew*, 354 Ark. 621, 625, 128 S.W.3d 423, 426 (quoting 25 Am. Jur. 2d *Easements and Licenses* § 45 (1996)). It is imperative to note and remember that this case *does not* pertain to easements by necessity, which is another area of law ripe for confusion. This case solely concerns the requirements to prove a prescriptive easement.

The pertinent facts are not in dispute. Edwards, Rush, and Yarbery own adjacent tracts of land. Edwards purchased his tract in 1988, the Rushes purchased their tract in 2009, and Yarbery testified that his tract had been in his family for generations. A twelve-foot-wide dirt lane ("dirt lane") exits Mount Harmony Road commencing on the Edwards tract and then meanders across the Rush and Yarbery tracts. Shortly after Edwards purchased his tract in 1988, he built a gate where the dirt lane exits Mount Harmony Road. Edwards placed a combination lock on his gate. The previous occupiers of the Rush and Yarbery property routinely requested permission from Edwards to use the dirt lane to check on their cattle. Edwards obliged and routinely gave them neighborly permission to use the

11

dirt lane and provided the combination to his lock. Over the years, the lock on Edwards's gate changed from a single combination lock to what is described as a "daisy-chain" locking system where each landowner had his/her own key to his/her respective lock that was looped through a log chain. There is no disagreement that the Rushes, Yarbery, and their predecessors used the dirt lane that crosses Edwards's property to access their own property. This system of permissive ingress and egress has been in place for over thirty years since at least 1988 when Edwards purchased his tract.

For the sake of simplicity, we acknowledge that all owners and occupiers of the three tracts occasionally performed maintenance on the dirt lane. However, as explained below, mere maintenance does not place an owner of a tract on notice of adverse conduct.

However, everything changed in 2020 when the Rushes and Yarberys decided to commercially develop their respective property. The Rushes and the Yarberys wanted to use the dirt lane crossing Edwards's property for ingress and egress for their developments. Edwards disagreed. Hence, the disagreement concerning the use of the dirt lane was conceived.

The only issue is whether the historical use of the dirt lane as it crosses Edwards's tract by the Rushes and Yarberys was by permission of the Edwardses. If that use was permissive, then the only avenue by which the Rushes and Yarberys could gain any rights to Edwards's tract would be to prove the establishment of a prescriptive easement along the dirt lane. At trial, the circuit court split the baby leaving both sides dissatisfied. The circuit court found that the Rushes and the Yarberys established a prescriptive easement on Edwards's

12

tract along the dirt lane; however, the court found that the prescriptive easement could be used only for "the limited purposes of accessing their lands for ranching, farming, agriculture, hunting, fishing, recreation, and other personal uses" but not for "commercial uses . . . or for multi-family residential purposes such as planning or constructing subdivisions."

That leads us to two questions: (1) whether the use of the dirt lane on Edwards's tract by the Rushes and Yarberys was by permission; and (2) whether the Rushes and Yarberys proved the existence of a prescriptive easement. Even a cursory review of the evidence reveals that the use by the Rushes and Yarberys across the Edwards tract was by permission. Over thirty years ago, Edwards bought his tract and constructed a locked gate across the dirt lane. For thirty years, the Rushes and Yarberys or their predecessors in title requested that Edwards allow them to cross his tract to check their cattle. For thirty years, Edwards gave them the combination to his lock. Clearly, the use by the Rushes and Yarberys across Edwards's tract was permissive. That leads to the question of whether the Rushes and Yarberys proved the existence of a prescriptive easement across the Edwards tract.

To establish a prescriptive easement, there must be an overt act proved against the interests of the landowner (Edwards) to show that the permissive user (Rushes and Yarberys) has shown an adverse claim to the roadway. *Owners Ass'n of Foxcroft Woods v. Foxglen*, 346 Ark. 354, 57 S.W.3d 187 (2001); *Stone v. Halliburton*, 244 Ark. 392, 425 S.W.2d 325 (1968). It has also been described that the true owner (Edwards) must either know or be presumed to know of the adverse character of the claimant's (Rushes and Yarberys) possession based

on the facts and circumstances of the claimant's use. The alternative line of cases dating to *Manitowoc Remanufacturing v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991), hold that the claimant must take affirmative steps to put the true owner on notice of an adverse claim to support a prescriptive easement. Arkansas case law clearly requires that the claimant prove *adverse* use for seven years. There must be a "distinct and positive assertion . . . of a right hostile to the owner." *Harper v. Hannibal*, 241 Ark. 508, 408 S.W.2d 591 (1966). Not only has this court held that the claimant must prove an overt adverse act, but we have also held in *Pop-A-Duck, Inc. v. Gardner*, 2022 Ark. App. 88, at 11, 642 S.W.3d 220, 228, that "length of use accompanied by the fact that there had been no objection" was insufficient to establish the right to a prescriptive easement. In short, where is the overt act by the Rushes and Yarberys to place Edwards on notice? Where is the adverse conduct? Where are the affirmative steps? Where is the distinct and positive hostile assertion? Where are the seven years? There are none. If this court eliminates the requirement of showing an adverse or overt act by the permissive user when the landowner permits a neighbor to use the land for the claimant's benefit, then the rights of the owner of real property diminish considerably. The law is clear: permissive use cannot transform into adverse use or prescriptive use absent overt or adverse conduct sufficient to place the owner on notice of hostility. The majority's decision is a major shift in property law, which, for all practical purposes, eliminates the element of permissive use under a claim of right to establish a prescriptive easement, finding that long-term use will constitute abandonment of the permissive use. While giving lip service to the principle that there must be some overt act to

14

put the landowner on notice of the adverse use, that requirement has been discarded like yesterday's trash.

I would be remiss if I did not mention Yarbery's inapposite use of tacking by a previous owner. Yarberry had not owned the property for the requisite period of time to establish adverse possession of the dirt lane under a claim of right when he brought the lawsuit. The statutory period of seven years for adverse possession applies to prescriptive easements. *Neyland v. Hunter*, 282 Ark. 323, 668 S.W.2d 530 (1984); *Duty v. Vinson*, 228 Ark. 617, 309 S.W.2d 318 (1958); *Brundidge v. O'Neal*, 213 Ark. 213, 210 S.W.2d 305 (1948). In finding that a prescriptive easement should be granted, the court was forced to bootstrap Yarbery's adverse claim to that of his predecessor in title (Been) to permit a finding that an extended period of adverse claim of right to the dirt lane existed by the rule of tacking. "As a general proposition, an adverse occupant cannot tack the possession of a prior occupant to perfect adverse title in himself where predecessor did not or could not claim the land adversely." 2 C.J.S. *Adverse Possession* § 132; *St. Louis Union Tr. Co. v. Smith*, 207 Ark. 815, 182 S.W.2d 945 (1944). Not only did Yarbery use the Edwards tract by permission, Yarbery's predecessor in title also used the dirt lane crossing Edwards's property by permission. The circuit court erred by tacking the adverse possession (if one could be found) of the prior occupants (McNabb and Been) to that of Yarbery and Rush.

In conclusion, the circuit court erred in finding that the Rushes and Yarberys proved the existence of a prescriptive easement over Edwards's property. I would reverse.

HIXSON, J., joins.

15

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*; and *Walters, Allison, Parker & Estell*, by: *Derick Allison*, for appellants/cross-appellees.

*Jones, Jackson, Moll, McGinnis & Stocks, PLC*, by: *J. Dalton Person*, for appellee/cross-appellant.